**Affirmed and Majority and Concurring Memorandum Opinions filed December 10, 2013.**



In The

# Fourteenth Court of Appeals

### NO. 14-13-00599-CV

## IN THE INTEREST OF B.M., M.L., AND A.A.C., CHILDREN

**On Appeal from the 314th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2012-02208J**

## M A J O R I T Y   M E M O R A N D U M   O P I N I O N

Appellant, Monica R., appeals from the trial court's judgment terminating her parental rights to three of her children, B.M., M.L., and A.A.C.[1] In three issues, appellant asserts that she received ineffective assistance of counsel, the trial court improperly relied on the Department's evidence of constructive abandonment, and termination was in error because there was a potential for reunification of the children with their mother. We affirm.

---

[1] The fathers' parental rights were also terminated, but they have not appealed.

# I. FACTUAL AND PROCEDURAL BACKGROUND

On March 29, 2012, the Texas Department of Family and Protective Services (the Department) received a referral alleging neglectful supervision against appellant. Appellant tested positive for cocaine at the birth of A.A.C., her youngest child. At the time of the baby's birth, appellant lived with her boyfriend, the baby's father, and two other children, B.M. and M.L, who were ages three and two, respectively, when this proceeding began.[2] Appellant admitted using cocaine during her pregnancy while she had two young children at home. She stated that the last time she used cocaine was three weeks before the baby's birth. Toxicology tests performed at the hospital indicated more recent drug use, and the record reflected that appellant appeared to be under the influence of drugs when she arrived at the hospital to give birth. Appellant acknowledged that she had a history of mental illness and had not taken her prescribed medication during her pregnancy.

On April 2, 2012, the Department filed its original petition for protection of the children, seeking termination of parental rights and asking to be named managing conservator of the three children at issue. The Department obtained a temporary order for possession of the children. On April 12, 2013, the trial court held a full adversary hearing pursuant to Chapter 262 of the Texas Family Code. *See* Tex. Fam. Code § 262.201(a). The court found "sufficient evidence to satisfy a person of ordinary prudence and caution that there is a continuing danger to the physical health or safety" of the children and for the children to return home is contrary to their welfare, and signed further temporary orders on April 12, 2012. *See* Tex. Fam. Code § 262.201(c).

On June 21, 2012, the Department filed a family service plan for appellant,

---

[2] Appellant has five other children who live with their fathers and are not at issue in this suit.

2

requiring that she perform several services to enable her to provide a safe environment for the children so that they could be returned to her custody. *See* Tex. Fam. Code § 263.101. Among the services named in the plan were requirements that appellant participate in individual therapy, parenting classes, undergo a psychosocial evaluation and follow all recommendations made in that evaluation, undergo a substance abuse assessment and follow all recommendations in the assessment, and undergo inpatient drug rehabilitation. The plan also stated that appellant was required to refrain from criminal activity, including use of illegal drugs, and that appellant was required to obtain and maintain employment and stable housing for six months. The plan contained the required statutory notice to the parent that the failure to provide a safe environment for the children may result in termination of parental rights. *See* Tex. Fam. Code § 263.102(b). The trial court approved the plan, incorporated it into its orders, and ordered appellant to comply with each requirement set out in the plan. *See* Tex. Fam. Code § 263.106.

Before the trial began, appellant's counsel made an oral motion for a continuance, claiming there was a potential for reunification and appellant should be granted additional time to complete her service plan. The motion was denied. The case proceeded to trial without a jury on June 18, 2013. At trial, the court admitted into evidence numerous documents from the court file, including the temporary orders, family service plans, drug test results, medical records for appellant and the baby, and the child advocate's report.

The Department's case worker testified at trial that appellant did not begin participating in the services set out in her plan until February of 2013, eight months after the plan was filed. The evidence at trial indicated that appellant participated in some of the services in the plan, including parenting classes and a substance abuse assessment. Appellant failed, however, to complete a psychosocial

3

assessment and inpatient drug rehabilitation. Appellant continued to test positive for illegal drugs on multiple occasions during the pendency of the case.[3] The case worker acknowledged that two months before trial, appellant provided an address for the residence where appellant stated she lived. Appellant did not claim to have resided there for six months, as required by the plan, however. In addition, appellant had not provided a lease to demonstrate she lived there, as required by the plan. Appellant also did not provide proof of employment.

The case worker testified that it was difficult to contact appellant. The phone number appellant gave her had been disconnected. When appellant called the Department, she used friends' phones. The case worker stated that she contacted appellant about participating in her psychosocial assessment shortly before trial. The worker testified she made arrangements for appellant's participation and informed appellant that the provider would contact her in two to three weeks. The case worker acknowledged that she did not follow up to see that appellant received information about the assessment.

Bruce Jefferies from National Screening Center, the agency that conducted the drug testing required pursuant to the service plan, testified at trial that on April 12, 2012, appellant tested positive for cocaine in a hair follicle test indicating appellant used cocaine during the previous 90 days. On May 31, 2012, appellant tested positive for cocaine and methamphetamines in a urinalysis that indicated she used the drugs within three days prior to the test. Appellant's hair test was positive for methamphetamine at "a very, very high level," and for cocaine and alcohol. Seven months later on January 24, 2013, appellant again tested positive for cocaine and methamphetamine, and use was indicated during the three months before the

---

[3] According to drug test results admitted into evidence at trial, appellant tested positive for cocaine on April 12, 2012, and positive for cocaine and methamphetamine on both May 31, 2012, and January 24, 2013.

test.

As a result of appellant's drug use, she was unable to maintain visits with her children and last saw them in September of 2012, approximately nine months before trial. The case worker acknowledged that appellant provided the children with some support for the first five months of the case, but the support stopped when appellant stopped seeing her children.

The case worker testified that the agency considered both of the maternal grandparents for alternative placement of the children, but neither grandparent was willing to take the children. The maternal grandfather also informed the Department's case worker that he was already taking care of four children and could not take any more. The children were in foster care at the time of trial.

Appellant testified at trial. She stated she had completed an outpatient treatment program on the Thursday before trial. Appellant testified that she went to two different hospitals in an attempt to do inpatient treatment but both informed her that all she needed was outpatient treatment. Appellant acknowledged that in November of 2012, she checked herself into an inpatient treatment facility, but left after three days. She said that she stopped visiting her children when the Department told her to stop as a result of her testing positive for drug use. She claimed that she last used drugs the previous December, and explained that she waited so long to participate in her services because she was, "stuck in the addiction." She testified that she had "dealt with that addiction now." She said she has a three bedroom mobile home and works selling tacos, though she was unable to provide proof that she was employed.

The child advocate volunteer testified that she was in agreement with the Department that appellant's parental rights should be terminated, and her report was admitted in evidence. Appellant reported to the child advocate that she was

diagnosed with major depression and attempted suicide in 2005. The child advocate stated that she visited appellant's residence the week before trial and asked appellant to show her what medication she was taking. Appellant had only three empty prescription bottles dated the previous April that had not been refilled. Appellant admitted to the child advocate that she was not under a psychiatrist's care and stopped taking her medication because she was feeling better.

The child advocate's report reflected that appellant had the following criminal record: a 2009 conviction and sentence of six months in jail for possession of a controlled substance, and a 2010 conviction and sentence of 180 days in jail for theft and failure to provide information regarding a fugitive. These convictions occurred after the births of the two older children at issue here. The report further stated that appellant has five other children, all of whom lived with their respective fathers and whom she had not seen in two to three years. Appellant's stated reason for not seeing her other children was that she was using drugs. The report noted that appellant's visits in this case were discontinued because of her continued use of drugs, and as a result, appellant had not seen B.M., M.L. or A.A.C. for approximately eight months. The report stated the child advocate's position that appellant did not make the necessary changes to provide her children with a safe and stable home environment and concluded that it is in the best interests of the children for appellant's parental rights to be terminated because the children are young and unable to protect themselves, appellant failed to participate in the rehabilitative services offered by the Department, and appellant continued to use illegal drugs.

At the conclusion of the trial, the court found by clear and convincing evidence that termination of appellant's parental rights is in the best interest of the children. The court also found clear and convincing evidence that appellant

engaged in the following conduct as grounds for termination:

(E) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child;

(N) constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services or an authorized agency for not less than six months, and:

(i) the department or authorized agency has made reasonable efforts to return the child to the parent;

(ii) the parent has not regularly visited or maintained significant contact with the child; and

(iii) the parent has demonstrated an inability to provide the child with a safe environment;

(O) failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child; . . . .

Tex. Fam. Code. § 161.001(1) (E), (N), & (O).

The trial court signed a final decree terminating appellant's parental rights on July 9, 2013. Appellant filed a timely motion for new trial and a timely notice of appeal. Appellant raises three issues in this appeal. Appellant alleges that she received ineffective assistance of counsel, the trial court improperly relied on the Department's evidence of constructive abandonment, and termination was in error because there was a potential for reunification of the children with their mother. Appellant's second and third issues are effectively challenges to the sufficiency of the evidence and will be addressed first. *See Nat'l Gas Pipeline Co. v. Pool*, 124 S.W.3d 188, 201 (Tex. 2003) (stating the general rule that appellate courts first address those issues that would require rendition of judgment).

## II. LEGAL AND FACTUAL SUFFICIENCY STANDARDS

Due to the severity and permanency of the termination of parental rights, the burden of proof at trial is heightened to the clear and convincing standard. *See* Tex. Fam. Code § 161.001; *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). "Clear and convincing evidence" means "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code § 101.007. This heightened burden of proof results in a heightened standard of review. *In re C.M.C.*, 273 S.W.3d 862, 873 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

When determining legal sufficiency, we review "all the evidence in the light most favorable to the court's finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d at 266. To give appropriate deference to the factfinder's conclusions, we must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. *Id.* We disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. *Id.* However, this does not mean that we must disregard all evidence that does not support the finding. *Id.* Because of the heightened standard, we must also be mindful of any undisputed evidence contrary to the finding and consider that evidence in our analysis. *Id.*

When reviewing a factual sufficiency challenge under the clear and convincing burden, the analysis is somewhat different in that we must consider all of the evidence equally, both disputed and undisputed. *Id.* We must consider whether the evidence is sufficient to produce in the mind of the factfinder a firm belief or conviction as to the truth of the allegation sought to be established. *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002). We consider whether disputed evidence is

such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding. *In re J.F.C.*, 96 S.W.3d at 266. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.*

In a proceeding to terminate the parent-child relationship brought under section 161.001 of the Texas Family Code, the petitioner must establish, by clear and convincing evidence, one or more acts or omissions enumerated under subsection (1) of section 161.001 and that termination is in the best interest of the child under subsection (2). Tex. Fam. Code § 161.001; *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). We need only determine if the evidence is legally and factually sufficient to support a single predicate ground for termination and the trial court's finding that the termination is in the best interest of the children. *See* Tex. Fam. Code § 161.001; *In re A.V.,* 113 S.W.3d 355, 362 (Tex. 2003); *In re A.L.,* 389 S.W.3d 896, 900 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

## A. Constructive Abandonment

In appellant's second issue, she contends it was error for the trial court to rely on any of the Department's evidence about constructive abandonment because the Department engaged in fraud. In other words, appellant contends that the trial court should not have credited the Department's evidence against her to find that appellant constructively abandoned her children, one of the statutory grounds for termination of her parental rights. *See* Tex. Fam. Code § 161.001(1)(N). Accordingly, we interpret this issue as a challenge to the sufficiency of the evidence *See In re J.F.C.*, 96 S.W.3d at 266 (discussing resolution of disputed evidence as part of sufficiency review).

We first note that appellant has not challenged the other statutory grounds

for termination found by the trial court. In addition to constructive abandonment, the trial court terminated appellant's parental rights under section 161.001(1)(E) for endangering her children and under section 161.001(1)(O) for failing to comply with her service plan following the removal of her children for abuse or neglect. Tex. Fam. Code § 161.001(1). Therefore, appellant has waived any complaint about the sufficiency of the evidence to support these predicate findings. *See Toliver v. Tex. Dep't of Family & Protective Servs*., 217 S.W.3d 85, 102–03 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (holding that parent who challenged only one of four statutory grounds found by trial court to support termination waived any complaint about the sufficiency of the evidence to support the unchallenged findings). Because only one statutory ground for termination is required to be established and appellant failed to challenge two additional grounds, it is not necessary to consider constructive abandonment. *See In re A.V.,* 113 S.W.3d at 362. Nonetheless, we will briefly address appellant's contention.

A parent constructively abandons a child when (1) the child has been in the permanent or temporary managing conservatorship of the State or an authorized agency for not less than six months, (2) the State or the authorized agency has made reasonable efforts to return the child to the parent, (3) the parent has not regularly visited or maintained significant contact with the child, and (4) the parent has demonstrated an inability to provide the child with a safe environment. Tex. Fam. Code § 161.001(1)(N); *In re A.S*., 261 S.W.3d 76, 88–89 (Tex. App.— Houston [14th Dist.] 2008, pet. denied).

Appellant argues that the trial court erred in relying on the State's witnesses because they fraudulently manufactured or caused the conditions supporting a finding that appellant constructively abandoned her children. Appellant asserts that that she was "set up" on the abandonment claim, and the caseworker

"programmed" abandonment "into Appellant's mind." Appellant contends that the State threatened to have the relatives with whom the children had been placed jailed if they permitted appellant to visit her children. Appellant asserts that she was not ordered to pay child support, and the failure to pay support should not be used against her. Appellant claims the Department "systematically sabotaged" her efforts.

Appellant's brief provides very little citation to the record and no citation to any legal authority in support of this claim. Appellant's contention seems to be that the Department improperly stopped her visits with her children to manufacture an abandonment claim. Appellant claims that her visits were not stopped because of drug use because she had been using drugs when the children were removed from her care in April of 2012, yet she was permitted visits after removal until October of 2012. She asserts that the claim that visits were stopped because of drug use makes no sense because there was no positive drug test at the time the visits were stopped. Appellant presents no evidence that the caseworker used her drug use as a pretense for suspending visitation. Appellant does not address the fact that appellant had another positive drug test showing recent use after the children were removed from her custody, and the representative from the drug testing center stated her levels were "very, very high." Therefore, continued drug use after removal of the children could have been a basis for suspension of visits. At trial, appellant was afforded the opportunity to explain why she thought the Department stopped her visits. In response, appellant made no mention of a "ruse" used by the caseworker, but instead, she simply stated the reason was that her drug tests were positive.

It is not disputed that the children have been in the Department's custody for more than six months. By establishing a service plan, the Department has made

reasonable efforts to return the children to appellant. The State's preparation and administration of a service plan for the parent constitutes evidence that the State made reasonable efforts to return the child to the parent. *In re M.R.J.M.*, 280 S.W.3d 494, 505 (Tex. App.—Fort Worth 2009, no pet.). Appellant conceded that she had not visited the children for over eight months. By failing to complete her service plan, which was not challenged on appeal, appellant has not demonstrated an ability to provide the children with a safe environment. Tex. Fam. Code § 161.001(1)(N); *See In re J.J.O.*, 131 S.W.3d 618, 630 (Tex. App.—Fort Worth 2004, no pet.) (attending only half of her parenting classes, lacking steady housing and employment, and missing the opportunity for counseling and a psychological evaluation demonstrated inability to provide child with safe environment).

We conclude, after applying the appropriate standards of review, that the evidence is legally and factually sufficient to support the trial court's finding of constructive abandonment under section 161.001(1)(N). We overrule appellant's second issue.

## B. Potential for Reunification

In her third issue, appellant asserts that the trial court erred in terminating her parental rights because there was a potential for reunification with her children. In a termination proceeding, the potential for reunification of the family is part of the consideration for determining the best interest of the child. *See Horvatich v. Tex. Dep't of Protective and Regulatory Servs.*, 78 S.W.3d 594, 601–03 (Tex. App.—Austin 2002, no pet.) (finding factually insufficient evidence that termination was in the best interest of the children where the record suggested CPS did not adequately consider reunification); *see also Langford v. Texas Dep't of Protective & Regulatory Servs.*, No. 03-99-00377-CV, 2000 WL 329041 (Tex. App.—Austin Mar. 30, 2000, pet. denied) (mem. op.) (recognizing that the

requirement to show termination is in the best interest of the child subsumes the issue of family reunification).

There is a strong presumption that the best interest of a child is served by keeping the child with its natural parent, and the burden is on the Department to rebut that presumption. *In re D.R.A.*, 374 S.W.3d 528, 533 (Tex. App.—Houston [14th Dist.] 2012, no pet.). The same evidence of acts or omissions used to establish grounds for termination under section 161.001(1) may be probative in determining the best interest of the child. *Id.*

Factors relevant to the determination of whether termination is in the best interest of the children include: the emotional and physical danger to the children now and in the future; the parental abilities of the individuals seeking custody; the programs available to assist these individuals to promote the best interest of the child; the plans for the child by these individuals or by the agency seeking custody; the stability of the home or proposed placement; and the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one. *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976). This list is not exhaustive, and evidence is not required on all of these factors. *Id.*; *In re D.R.A.*, 374 S.W.3d at 533. With these considerations in mind, we review the evidence below.

Appellant continued to use drugs in the face of a court order conditioning her reunification with her children on her ability to remain drug-free. A parent's drug use is a condition that can endanger a child's physical or emotional well-being and indicate instability in the home environment. *P.W. v. Tex. Dep't of Family & Protective Servs.*, 403 S.W.3d 471, 479 (Tex. App.—Houston [1st Dist.] 2013, pet. dism'd); *see also In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.) (evidence of parent's illegal drug use supports conclusion

that environment endangers physical or emotional well-being of children).

Appellant did not complete the services required for reunification as set out in her court-ordered family service plan. Whether the parent has completed the family service plan may be considered in reviewing a best-interest finding. *See In re R.D.S.*, No. 14–09–00980–CV, 2010 WL 4882457, at *7 (Tex. App.—Houston [14th Dist.] Nov. 30, 2010, no pet.) (mem.op.)

The children are very young, ages four, three and one at trial. Because of their ages, there was no evidence of the desires of the children. The youngest child had been in the Department's custody since shortly after he was born. Appellant had not seen her children since approximately eight to nine months prior to trial. There was testimony that appellant's drug use, instability, and failure to take medication for depression, all could pose a danger to the children. Appellant had five other children that she was not caring for and had not seen for two to three years. Appellant acknowledged to the child advocate that she had not seen these older children because of her drug use. Appellant admitted using drugs while pregnant with the youngest child. The Department's case worker testified that it is in the best interest of the children to terminate appellant's parental rights because she did not comply with her service plan and the children need a stable home.

Appellant argues that she demonstrated that she had made progress and if she were given more time, she would be able to reunite with her children. She argued that she had obtained suitable housing two months before trial, she had tested negative for drugs at her most recent test shortly before trial, and she recently completed an outpatient drug program.

While the record reflects that appellant has made some positive strides in her life, her recent actions do not negate her history of drug use and endangering conduct. A trier of fact is not required to ignore a long history of irresponsible

choices and bad behavior because the behavior abates as trial approaches. *See In re J.O.A.*, 283 S.W.3d 336, 343 (Tex. 2009) (providing that evidence of improved conduct, especially of short duration, does not conclusively negate the probative value of a history of irresponsible choices); *In re M.G.D.*, 108 S.W.3d 508, 513–14 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (providing that evidence of a recent turnaround should be determinative only if it is reasonable to conclude that the positive improvements will surely continue).

In sum, the following evidence supports a finding that termination of appellant's parental rights is in the children's best interests: appellant had a long history of using illegal drugs, used drugs while pregnant with the youngest child, continued to use drugs throughout the majority of the pendency of her case, had her visits suspended as a result of her using drugs, failed to participate in the rehabilitative services offered by the Department, and failed to take prescribed medication for mental problems. In addition, the children are currently placed in a foster home. The Department's caseworker testified that the children need a stable home and their current placement is meeting their physical and emotional needs. She also testified that the Department had approximately six prospective adoptive homes for the children.

Viewing all the evidence in the light most favorable to the judgment, we conclude that the factfinder could have formed a firm belief or conviction that termination of appellant's parental rights was in the children's best interest. *See* Tex. Fam. Code § 161 .001(2); *In re J.F.C.*, 96 S.W.3d at 265–66. Considering the same evidence in a neutral light, we conclude the disputed evidence is not so significant as to prevent a trier of fact from forming a firm belief or conviction that termination of appellant's parental rights is in the children's best interest. *See* Tex. Fam. Code § 161.001(2); *In re C.A.J.*, 122 S.W.3d 888, 894 (Tex. App.—Fort

15

Worth 2003, no pet.) (holding the evidence was factually sufficient to support termination was in the child's best interest where the evidence reflected that the mother was unable to maintain a stable home or employment). Therefore, we hold the evidence is legally and factually sufficient to support the trial court's finding that termination of the parent-child relationship is in the children's best interest. We overrule appellant's third issue.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Having determined that appellant is not entitled to rendition of judgment based on insufficient evidence, we turn to her complaints against her former appointed counsel. Appellant filed a motion for new trial in which she raised ineffective assistance of counsel, and she provided an affidavit containing her specific allegations. Our record does not reflect that a hearing was held on the motion, and it appears that it was overruled by operation of law.

In Texas, there is a statutory right to counsel for indigent persons in parental-rights termination cases, and this right embodies the right to effective counsel. *In re M.S.*, 115 S.W.3d 534, 544 (Tex. 2003). We apply the established *Strickland* test in parental-rights termination proceedings. *Id.* at 545 (citing *Strickland v. Washington* 466 U.S. 668, 104 S.Ct. 2052 (1984)). Under *Strickland,* to establish an ineffective assistance claim, an appellant must show the following:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland*, 466 U.S. at 687. In other words, a parent must show that counsel's performance was deficient and that this deficient performance prejudiced the

parent's case. *In re M.S.,* 115 S.W.3d at 545.

To determine whether representation was deficient, we must consider all of the circumstances surrounding the case and determine whether counsel was "reasonably effective." *Id.* In doing so, we afford great deference to counsel's performance, indulging "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* (quoting *Strickland,* 466 U.S. at 689). Only if counsel's conduct is "so outrageous that no competent attorney would have engaged in it," will we find such performance deficient. *Id.* (quoting *Garcia v. State,* 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)).

In conducting the harm analysis under the second prong of *Strickland,* reviewing courts must determine whether there is a reasonable probability that, but for the deficient performance, the result of the proceeding would have been different. *In re M.S.,* 115 S.W.3d at 550. In this context, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068. Thus, the parent must also show that "counsel's deficient performance prejudiced the defense." *In re J.O.A.,* 283 S.W.3d at 344 (quoting *Strickland,* 466 U.S. at 687).

An allegation of ineffective assistance of counsel in a termination proceeding must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness and the resulting harm. *Walker v. Tex. Dep't of Family & Protective Servs.,* 312 S.W.3d 608, 622–23 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). We may not speculate and find trial counsel ineffective when the record is silent regarding counsel's reasons for his actions. *P.W.,* 403 S.W.3d at 476 (recognizing that courts will ordinarily presume that the challenged action is sound trial strategy when the record is silent as to counsel's motivations).

The allegations in appellant's brief are cursory and are not supported by the record. The brief cites to appellant's affidavit included with her motion for new trial in which appellant alleged several instances of ineffective assistance of counsel. For example, appellant complains that counsel only investigated the case "for two minutes" before each hearing. The statement contained in appellant's affidavit alleges only that her trial counsel met with her for two minutes prior to a hearing. The affidavit does not support a claim that this meeting was the only time her counsel spent on the case. Moreover, the clerk's record contains documents showing her trial counsel spent additional time outside of court working on her case.

Appellant asserts that counsel should have requested a continuance because a witness was unavailable for trial. Our review of the record reflects that trial counsel did, in fact, request a continuance before trial started on the basis that appellant needed more time to complete her services. Counsel argued that appellant had completed the majority of her services except the psychosocial evaluation, and appellant had a hard time reaching the caseworker about completing it. Counsel requested more time to complete the service plan so she could be considered for reunification with her children. The motion was denied.

Based on this record, we reject appellant's argument that counsel provided deficient representation because the motion for continuance was not based instead on the unavailability of a witness. According to the affidavit attached to appellant's motion for new trial, the witness in question was Sherry Scott, a counselor, who apparently had knowledge about appellant's outpatient drug therapy. The evidence at trial was that appellant failed to participate in treatment complying with the requirements of the Department's family service plan. The Department's caseworker testified that she was aware appellant had undergone outpatient

treatment, but outpatient treatment was insufficient to meet the requirements of appellant's plan. It was plausible that appellant's trial counsel chose not to call Scott so as not to highlight that appellant failed to follow the Department's directions and instead chose to attend a different treatment program. Appellant makes no argument that this one witness's testimony was so essential to her defense that failing to have her present constituted conduct in which no reasonable attorney would have engaged. Without such a showing, it was possible that counsel feared the witness's testimony may have hurt appellant's defense. Counsel also may have determined that a further motion for continuance due to an absent witness would be denied and only prejudice appellant's case.

Appellant asserts that the testimony of the child advocate and the Department's case worker should have been cross-examined. The record reflects that appellant's counsel cross-examined witnesses, eliciting testimony favorable to appellant. Appellant acknowledged that her attorney "did a good job" showing that the Department's case worker failed to provide information about where to undergo a psychosocial assessment. Appellant's attorney cross-examined the Department's case worker, who admitted she did not follow-up to verify if the service provider had contacted appellant for the psychosocial assessment. In response to questions from appellant's attorney, the case worker also acknowledged that appellant completed an outpatient drug program. The case worker admitted appellant had informed her where she lived, but she had never visited appellant's home. Counsel elicited testimony that appellant had recently received a certificate for completing outpatient drug treatment. Appellant's counsel additionally brought out evidence that appellant took a drug test on May 29, 2013, shortly before trial, and tested negative for illegal drugs. Appellant also stated her attorney "properly called for the judge to honor his client's efforts" regarding her recent negative drug tests and that she complied with the case worker's instructions

that she was not to visit the children after testing positive for illegal drugs.

Appellant asserts that counsel should have shown that the Department's asserted reason for stopping appellant's visits, her drug use, was a "ruse" because appellant had been permitted supervised visits after testing positive for cocaine. Appellant asserts that counsel should have called the aunt with whom the children had been placed to testify about the Department's threats to jail her if she permitted appellant to visit her children. The only support for this contention is found in appellant's affidavit attached to her motion for new trial. There is no affidavit from the aunt. The fact that her trial counsel did not call the aunt as a witness could indicate that the aunt's testimony would not have corroborated appellant's statement.

There is nothing in the record before us showing that counsel's trial strategy was unreasonable. Without an explanation from trial counsel for his actions, we may not, in the face of the strong presumption in favor of reasonable representation, conclude that trial counsel lacked sound strategic reasons for his conduct. *See M.S.,* 115 S.W.3d at 549. The record demonstrates that appellant's trial counsel may have acted in accordance with a plausible strategy. *See Maxwell v. Tex. Dep't of Family & Protective Servs*., No. 03–11–00242–CV, 2012 WL 987787, at *6 (Tex. App.—Austin Mar. 23, 2012, no pet.) (mem. op.) (stating that an error in trial strategy will be deemed inadequate representation only if counsel's actions are without any plausible basis). A strategy apparent from the record was to have appellant acknowledge her mistakes and show her willingness to correct them. Counsel's first act at trial was to acknowledge appellant's failure to complete her service plan, and to ask for a continuance to give her more time to complete it. Similarly, counsel's first questions to appellant elicited her acknowledgement that she failed to complete inpatient treatment and provided her explanation for that

failure. Much of the remainder of appellant's testimony elicited by her attorney dealt with appellant's attempts to comply with the Department's requests. For example, appellant participated in outpatient treatment in an attempt to satisfy the requirement for inpatient therapy, she complied with the Department's requests that she stop her visits with her children, she obtained housing and notified the case worker, and she attempted to contact the caseworker in order to participate in her psychosocial evaluation. In response to her counsel's questioning, appellant stated:

> . . . . I know I did a mistake and I'm working on that, learn from my mistake to, to be there for my children and do what I have to do for them. I'm not perfect. I made a mistake. And I'm sorry for that. I'm doing my best. I'm doing everything. If I have another chance, I will go complete what I have to do.

Appellant has not cited to a failure by counsel to preserve appellate rights that would rise to the level of ineffective assistance. *See In re M.S.*, 115 S.W.3d at 549. Appellant points to no evidence that could have been adduced by trial counsel through further questioning, or any additional witnesses, documentary evidence, or further investigation that would have aided appellant's case. Instead, appellant's complaints simply constitute critiques of trial counsel's performance made with the benefit of hindsight. Such claims are insufficient to substantiate an ineffective assistance claim. *See In re H.R.M.,* 209 S.W.3d 105, 111 (Tex. 2006) (rejecting ineffective assistance claim based on appellant's seven specific challenges to counsel's performance finding appellant failed to overcome strong presumption of reasonably effective assistance); *Maxwell*, 2012 WL 987787, at *6 (stating that questions regarding what witnesses to call, whether and how to cross-examine witnesses, and when to object are all matters of classic trial strategy that may indicate a case could be tried differently, but do not establish deficient representation); *see also In re J.W.*, 113 S.W.3d 605, 616 (Tex. App.—Dallas 2003, pet. denied) (holding that the failure to object to the admission of the

parents' criminal records does not support an ineffective assistance claim)

As to the second prong of the *Strickland* test, appellant has not shown that any of the actions she claims her trial counsel should have taken would have resulted in a different outcome. For example, appellant complains that counsel should have admitted into evidence exhibits demonstrating her participation in certain services. These included certificates showing participation in parenting classes, a letter and certificate from a provider of drug treatment, and a negative drug test. Appellant's participation in parenting classes and her outpatient drug treatment were not contested at trial. The negative drug test results from May of 2013 were admitted. While these exhibits may have been favorable to appellant, there is nothing showing that any of the proposed evidence would have made a difference in the trial's result. The Family Code makes no allowance for substantial compliance with a family service plan. *See In re M.C.G.*, 329 S.W.3d 674, 676 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). Because none of the exhibits proposed by appellant would show full compliance with appellant's family service plan, there has been no showing that appellant was prejudiced because counsel did not admit them as evidence.

The evidence at trial showed that appellant had a history of drug use that negatively affected her parenting of her five older children, she admitted to using illegal substances while pregnant with her youngest child, she tested positive for drugs multiple times while her children were in the Department's care, and she failed to fully participate in the rehabilitative services offered by the Department. In light of the substantial evidence in support of the trial court's findings, appellant has not established that but for the alleged deficiencies in her counsel's performance a different outcome would have resulted. *See Bermea v. Texas Dep't of Family & Protective Servs.*, 265 S.W.3d 34, 44 (Tex. App.—Houston [1st Dist.]

2008, pet denied) (holding appellant did not suffer harm by counsel's deficient performance in failing to preserve sufficiency review where she could not have prevailed on those arguments). In conclusion, appellant's allegations against her counsel's performance do not rise to the level of "outrageous" conduct. The record simply does not affirmatively show a reasonable probability that, but for the conduct of appellant's counsel, "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. Therefore we hold that under the two-pronged *Strickland* test, appellant has failed to show that her trial counsel was deficient or that he prejudiced appellant's defense. *See In re M.S.,* 115 S.W.3d at 544. We overrule appellant's first issue.

## IV. CONCLUSION

Having overruled appellant's issues, we order the judgment of the trial court affirmed.

/s/     Marc W. Brown
Justice

Panel consists of Justices Christopher, Donovan, and Brown. (Christopher, J., concurring).