Opinion issued April 23, 2013.



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-11-00603-CV

———————————

**P.W., Appellant**

**V.**

**DEPARTMENT OF FAMILY AND PROTECTIVE SERVICES, Appellee**

---

**On Appeal from the 313th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1002874J**

---

**O P I N I O N**

The Department of Family and Protective Services sought termination of P.W.'s parental rights to her children, Z.N.W. and R.K.T. After a bench trial, the trial court concluded that the Department had proved by clear and convincing evidence that there were grounds for termination of P.W.'s parental rights and that termination was in the children's best interest. Accordingly, the trial court terminated P.W.'s parental rights. P.W. challenges the trial court's judgment terminating her parental rights on the basis that she received ineffective assistance of counsel. We affirm.

### Background

In 2007, P.W. was arrested in a narcotics sting. P.W. brought Z.N.W., her four-month-old child, with her to the drug deal. P.W. was charged with a third-degree felony of possession of a controlled substance. She received deferred adjudication community supervision in the spring of 2009, a few months before R.K.T. was born.

The Department first opened a case shortly after P.W.'s 2007 arrest. In April 2010, the Department filed suit seeking termination of P.W.'s parental

rights.[1]  At the initial hearing, the trial court ordered P.W. to comply with the Department's service plan.  The plan required P.W. to refrain from using illegal drugs, submit to drug screenings, and complete outpatient and inpatient drug rehabilitation.  The trial court incorporated these same requirements into a June 2010 order.  In a subsequent meeting with her Department caseworker, P.W. admitted that she had used marijuana and Xanax.  The caseworker ordered a drug screening, and P.W. tested positive for marijuana, cocaine, and benzodiazepine.  A hair follicle drug screening a few months later yielded a positive result for the presence of cocaine.  Concerning the other requirements of the service plan and the court order, P.W. completed the outpatient rehab, but not the inpatient.

At trial, Alvincher Willis, who was the case worker assigned to P.W.'s case, testified that, although the Department attempted to work with P.W., P.W. did not work with the Department.  Willis did, however, acknowledge that P.W. had made some progress on her service plan before being imprisoned in January.  An affidavit from one of P.W.'s previous caseworkers, which was made part of the trial court's record, corroborates Willis's statement that P.W. did not work with the Department.  In the affidavit, the caseworker noted the difficulty caseworkers

---

[1]     The Department also sought to establish the paternity of the boys' father, R.T., and to terminate his parental rights.  In its final judgment, the trial court adjudged R.T. the father and terminated his parental rights.  R.T. has not appealed.

experienced trying to contact P.W. Despite the Department's attempts to contact her through phone calls and messages, P.W. often failed to respond. Once, when they were on the way to P.W.'s apartment, the caseworker and a uniformed law enforcement officer passed P.W. and R.K.T. in the parking lot, but the caseworker did not recognize them. When she realized the caseworker and officer were heading to her apartment, P.W. attempted to load R.K.T into a car and flee. The officer had to stop P.W. and escort her to the Department in order for the caseworker to speak with her about the case.

The children were initially placed with P.W.'s grandmother, but have been in a foster home since October 2010. The foster mother testified that the boys were doing "perfect" in the foster home. The foster family indicated a desire to adopt the children, should P.W.'s parental rights be terminated.

P.W. failed to report to her community supervision officer during her deferred adjudication community supervision. As a result, in January 2011, the trial court adjudicated P.W. guilty on the possession charge and sentenced her to four years' imprisonment.

The trial court held a bench trial on June 14, 2011. P.W. was represented by appointed counsel. Counsel cross-examined Willis, the Department's primary witness. Counsel objected to some of the questions posed to Willis by the

4

Department and by the attorney ad litem for the children. Counsel also called and conducted direct examination of P.W. and presented argument at the close of evidence.

> The trial court found the following grounds for termination:
>
> [P.W.] knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endanger the physical or emotional well-being of the children, pursuant to § 161.00l(l)(D), Texas Family Code;
>
> [P.W.] engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangers the physical or emotional well-being of the children, pursuant to § 161.00l(l)(E), Texas Family Code; [and]
>
> [P.W.] knowingly engaged in criminal conduct that has resulted in [her] conviction of an offense and confinement or imprisonment and inability to care for the children for not less than two years from the date of filing the petition, pursuant to §161.001(1)(Q), Texas Family Code[.]

The trial court also found the Department had proved by clear and convincing evidence that termination was in the children's best interest. The trial court terminated P.W.'s parental rights and appointed the Department the sole managing conservator for the children. P.W. appeals.

5

**Analysis**

**A.    Termination of Parental Rights**

In order to terminate parental rights under section 161.001 of the Family Code, the petitioner must establish that the parent engaged in conduct enumerated in one or more of the subsections of section 161.001(1) and must also show that termination of the parent-child relationship is in the best interest of the child.  TEX. FAM. CODE ANN. § 161.001 (West Supp. 2012); *In re E.N.C.*, 384 S.W.3d 796, 803 (Tex. 2012).  A factfinder need find only one ground under section 161.001(1) to support a judgment of termination, if there is also a finding that termination is in the child's best interest.  *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003).

Because of the importance and constitutional implications of parental rights, grounds for termination must be proved by clear and convincing evidence rather than the lower preponderance of the evidence standard applicable in most civil cases.  TEX. FAM. CODE ANN. § 161.001; *In re C.H.*, 89 S.W.3d 17, 23 (Tex. 2002). Clear and convincing evidence refers to a degree of proof that will produce in the mind of the factfinder a firm belief or conviction as to the truth of the allegations sought to be proved.  *In re C.H.,* 89 S.W.3d at 25.

**B.      Ineffective Assistance of Counsel**

"In Texas, there is a statutory right to counsel for indigent persons in parental-rights termination cases." *In re M.S.*, 115 S.W.3d 534, 544 (Tex. 2003); *see* TEX. FAM. CODE ANN. § 107.013(a)(1) (West Supp. 2012).  The supreme court has held this right to counsel "embodies the right to effective counsel." *Id.*  To evaluate claims of ineffective assistance in parental-rights termination cases, the supreme court adopted the ineffective assistance standard applied in criminal cases, the test of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984).  *In re M.S.*, 115 S.W.3d at 545.   To show ineffective assistance of counsel under *Strickland*, the defendant has the burden to show both that counsel's performance was deficient and that counsel's deficient performance caused harm.  *Id.* (citing *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064); *see also In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009) (emphasizing ineffective assistance claim requires defendant to make requisite showing under both prongs of *Strickland*).  *Cf. Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003) (citing *Strickland*, 466 U.S. at 687-889, 104 S. Ct. at 2064, 2068) (stating ineffective assistance claim requires showing "1) that counsel's performance was deficient because it fell below an objective standard of reasonableness; and 2) a probability sufficient to undermine

7

confidence in the outcome existed that, but for counsel's unprofessional errors, the result of the proceeding would have been different").

In reviewing counsel's performance, we must indulge "'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,' including the possibility that counsel's actions are strategic." *In re M.S.*, 115 S.W.3d at 545 (quoting *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065). When the record is silent concerning the reasons for counsel's actions, we may not speculate to find trial counsel ineffective. *Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 623 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (citing *Gamble v. State*, 916 S.W.2d 92, 93 (Tex. App.—Houston [1st Dist.] 1996, no pet.)); *see also Maxwell v. Tex. Dep't of Family & Protective Servs.*, No. 03-11-00242-CV, 2012 WL 987787, at *6 (Tex. App.—Austin Mar. 23, 2012, no pet.) (mem. op.) (citing *Rylander*, 101 S.W.3d at 110–11) ("When the record is silent as to counsel's subjective motivations, courts will ordinarily presume that the challenged action might be considered sound trial strategy."). *Cf. Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994) (refusing to speculate to find counsel's actions deficient).

Under the second prong of the *Strickland* inquiry, we must review the record to determine whether counsel's deficient performance harmed the defendant. *In re*

8

*M.S.*, 115 S.W.3d at 549–50 (citing *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)). A defendant is harmed when "there is a reasonable probability that, but for counsel's unprofessional error(s), the result of the proceeding would have been different." *Id.* at 556 (quoting *Garcia*, 57 S.W.3d at 440). A "reasonable probability" is a probability sufficient to undermine confidence in the outcome of the proceeding. *In re V.V.*, 349 S.W.3d 548, 559 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (citing *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068). *Cf. Rylander*, 101 S.W.3d at 110 (citing *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068) (stating second prong of *Strickland* requires showing of "probability sufficient to undermine confidence in the outcome existed that, but for counsel's unprofessional errors, the result of the proceeding would have been different").

## C. Analysis

### 1. The *Cronic* Presumption

P.W. complains that her trial counsel actually worked against P.W.'s interest and helped the Department advance its case, thereby falling below the objective standard of reasonableness required by the first prong of *Strickland*. Indeed, she argues that her trial counsel's performance was so deficient that we should ignore the second prong of *Strickland* and presume harm, under *United States v. Cronic*, 466 U.S. 648, 104 S. Ct. 2039 (1984). The Department responds that P.W. failed

9

to meet either the first or second prong of *Strickland* and that *Cronic* should not apply because it derives from the Sixth Amendment right to counsel, which does not apply in civil cases. *See Turner v. Rogers*, 131 S. Ct. 2507, 2516 (2011) ("[T]he Sixth Amendment does not govern civil cases."); *Travelers Indem. Co. v. Mayfield*, 923 S.W.2d 590, 594 (Tex. 1996) (noting that Texas supreme court "ha[s] never held that a civil litigant must be represented by counsel" to meet constitutional requirements); *see also Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 26–27, 101 S. Ct. 2153, 2159 (1981) ("[A]n indigent litigant has a right to appointed counsel only when, if he loses, he may be deprived of his physical liberty.").

*Cronic* applies where there has been an actual or constructive denial of counsel.[2] *Cronic*, 466 U.S. at 659, 104 S. Ct. at 2047.

> Under *Cronic* and its progeny, a defendant is denied counsel not only when his attorney is physically absent from the proceeding, but when he is mentally absent as well, *i.e.*, counsel is asleep, unconscious, or otherwise actually *non compos mentis*. This prong of *Cronic* is epitomized by the "inert" or "potted plant" lawyer who, although

---

[2]    Although not applicable to this case, *Cronic* also applies to "[c]ircumstances . . . when although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial." *Cronic*, 466 U.S. 648, 629–60 104 S. Ct. 2039, 2048 (1984) (identifying *Powell v. Alabama*, 287 U.S. 45, 53 S. Ct. 55 (1932), as such a case).

physically and mentally present in the courtroom, fails to provide (or is prevented from providing) *any* meaningful assistance.

*Ex parte McFarland*, 163 S.W.3d 743, 752 (Tex. Crim. App. 2005) (citations omitted). For example, the Court of Criminal Appeals applied *Cronic* when defense counsel, claiming he had not had adequate time to prepare, refused to participate in trial. *Cannon v. State*, 252 S.W.3d 342, 350 (Tex. Crim. App. 2008). Counsel, "although physically present in the courtroom at all the requisite times, effectively boycotted the trial proceedings and entirely failed to subject the prosecution's case to meaningful adversarial testing." *Id.* *Cronic* itself dealt with "state interference with counsel's assistance," such as limiting cross-examination of the State's key witness on the witness's credibility, an issue going to the heart of the case. *See Strickland*, 466 U.S. at 692, 104 S. Ct. at 2067 (citing *Cronic*, 466 U.S. at 659, 104 S. Ct. at 2046–47).

That is, for *Cronic* to apply, counsel's failure to test the prosecution's case "must be complete." *See Bell v. Cone*, 535 U.S. 685, 697, 122 S. Ct. 1843, 1851 (2002); *Cannon*, 252 S.W.3d at 350 (applying *Cronic* where defense counsel "entirely failed" to test State's case); *see also Burdine v. Johnson,* 262 F.3d 336, 345 (5th Cir. 2001) (en banc) (distinguishing between total lack of counsel and ineffective assistance of counsel; noting that prejudice is presumed only "when, during a critical stage of a trial, counsel is either (1) totally absent, or (2) present

11

but prevented from providing effective assistance"). This is because "bad lawyering, regardless of *how* bad, does not support the [*Cronic*] presumption; more is required." *McInerney v. Puckett*, 919 F.2d 350, 353 (5th Cir. 1990) (emphasis in original)); *In re L.D.G.*, No. 12-11-00005-CV, 2012 WL 171888, at \*2 (Tex. App.—Tyler Jan. 18, 2012, no pet.) (mem. op.); *see also In re V.V.*, 349 S.W.3d at 560 (refusing to apply *Cronic* in case where counsel had not "entirely failed" to subject Department's case to adversarial testing).

Here, P.W.'s argument is not that her counsel failed to oppose the Department throughout the termination proceeding as a whole, but that her counsel's attempts to do so were so misguided or unreasonable that they amounted to no representation by counsel. P.W. argues that her counsel "allied herself with the proponents of terminating her own client's parental rights." For example, P.W. faults her counsel for not inquiring further into why her relatives were rejected as care-givers following the Department's home studies and for failing to ask why other home studies were not conducted. P.W. also asserts that counsel's questioning of Willis actually supported the Department's request for termination of P.W.'s parental rights, especially because it essentially established that none of P.W.'s relatives were fit to have the children placed with them.

12

This is not an argument that counsel was "inert" or "entirely failed" to test the Department's case; rather it is an argument that counsel's actions fell below an objective standard of reasonableness. To evaluate P.W.'s argument, we must necessarily review counsel's actual performance at trial. Therefore, we conclude that P.W.'s claim of ineffectiveness in this case falls squarely within the type of claim governed by *Strickland*, and *Cronic* does not apply. *Compare Strickland*, 466 U.S. at 690, 104 S. Ct. at 2066 (stating that court reviewing claim of ineffectiveness "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case") *with Cronic*, 466 U.S. at 662, 104 S. Ct. at 2048 (stating that in certain cases "surrounding circumstances justify a presumption of ineffectiveness . . . *without inquiry into counsel's actual performance at trial*") (emphasis added). Accordingly, we reject P.W.'s contention that we should presume harm under *Cronic* and dispose with our analysis under *Strickland*'s second prong. *See In re V.V.*, 349 S.W.3d at 560; *In re L.D.G.*, 2012 WL 171888, at *2.

## 2.    **Application of *Strickland***

Having concluded that *Cronic* does not apply and that P.W. bore the burden to satisfy *Strickland*'s test, we conclude that we must affirm. P.W. has not satisfied *Strickland's* first prong because the record is silent about trial counsel's

13

reasons for the challenged conduct. That is, there was no motion for new trial hearing and no affidavit from trial counsel. We may not speculate to find counsel ineffective on a silent record. *Walker*, 312 S.W.3d at 623.

P.W. likewise failed to carry her burden on *Strickland*'s second prong. Indeed, P.W. has made no attempt to explain how, but for counsel's purportedly deficient performance, she had a reasonable probability of a different outcome. In her brief, P.W. concedes that the evidence is sufficient to support termination under Texas Family Code section 161.001(1)(Q). Termination on this ground was based on the undisputed fact that P.W. has been sentenced to four years' imprisonment, and she does not contend that anything her counsel did or failed to do would affect this determination. *See* TEX. FAM. CODE ANN. § 161.001(1)(Q) (providing for termination when parent is convicted for knowingly engaging in criminal conduct and confinement for not less than two years).[3]

---

3    In addition, there is evidence to support the other grounds for termination, namely that P.W. knowingly placed the children in conditions or surroundings which endangered the physical or emotional well-being of the children or engaged in conduct which endangered the physical or emotional well-being of the children. *See* TEX. FAM. CODE ANN. § 161.001(1)(D), (E). P.W. admitted to using drugs both before and after the trial court ordered her to cease using drugs as part of her family services plan. *See Robinson v. Tex. Dep't of Protective & Regulatory Servs.*, 89 S.W.3d 679, 686–87 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (holding "that appellant's illegal drug activity, a violation of community supervision after agreeing not to commit such acts in the Plan for reunification with her children, established clear and convincing proof of voluntary, deliberate, and conscious conduct that endangered the well-being of her children"); *In re*

The evidence also supports a finding that termination of P.W.'s parental rights is in the best interests of the children. Factors relevant to the determination of whether termination is in the best interest of the children include: the emotional and physical danger to the children now and in the future; the parental abilities of the individuals seeking custody; the programs available to assist these individuals to promote the best interest of the child; the plans for the child by these individuals or by the agency seeking custody; the stability of the home or proposed placement; and the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one. *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976). P.W. continued to use drugs in the face of a court order conditioning her reunification on her ability to remain drug-free. *See In re G.A.*, No. 01-11-00565-CV, 2012 WL 1068630, at *6 (Tex. App.—Houston [1st Dist.] Mar. 29, 2012, pet. denied) (mem. op.) (citing *Edwards v. Tex. Dep't of Protective Servs.*, 946 S.W.2d 130, 138 (Tex. App.—El Paso 1997, no writ)) (parent's drug use is condition that can endanger child's to physical or emotional well-being and indicate instability in home environment.; *see also In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.) (evidence of parent's illegal drug use supports conclusion

*J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.) (holding that parent's illegal drug use and drug-related criminal activity support a conclusion that the children's surroundings endanger their physical or emotional well-being).

that environment endangers physical or emotional well-being of children). Additionally, P.W.'s drug use caused her to be sentenced to four years' imprisonment. *See In re M.R.*, 243 S.W.3d 807, 821 (Tex. App.—Fort Worth 2007, no pet.) (parent's incarceration is appropriate factor to consider in making best interest determination); *see also In re V.V.*, 349 S.W.3d at 555 (parent's pattern of criminal conduct resulting in incarceration is conduct that endangers well-being of children).

Although a case had been open for almost three and a half years at time of trial, and a termination suit had been pending for over a year, P.W. did not consistently work towards completing the requirements of her service plan and did not contact the Department despite caseworkers' numerous attempts to meet with her. *See In re A.B.*, 269 S.W.3d 120, 129 (Tex. App.—El Paso 2008, no pet.) (failure to comply with service plan and refusal to meet with caseworkers among factors supporting a finding that termination was in child's best interest). Finally, there was evidence that the children were doing very well in the foster home and that the foster family planned to adopt them. *In re M.R.*, 243 S.W.3d at 821 (evidence children had improved in care of foster family supported trial court's determination that termination was in children's best interest).

P.W. does not dispute this evidence or contend that it was admitted due to her trial counsel's deficient performance.  Nor does P.W. identify any favorable evidence that counsel should have introduced but did not.  Accordingly, we conclude that P.W. has not met her burden under *Strickland's* second prong.  *See In re J.O.A.*, 283 S.W.3d at 344; *In re V.V.*, 349 S.W.3d at 559 (citing *J.O.A.*); *see also In re L.D.G.*, 2012 WL 171888, at \*1–2 (quoting *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064) (stating parent must show, in addition to deficient performance, that "counsel's deficient performance prejudiced the defense" and affirming where only harm argument made on appeal was argument to apply *Cronic* presumption).

## Conclusion

We affirm the trial court's judgment.

 

 

_____

Rebeca Huddle
Justice

Panel consists of Justices Keyes, Sharp, and Huddle.