**Affirmed and Memorandum Opinion filed March 10, 2015.**



In The

# Fourteenth Court of Appeals

### NO. 14-14-00773-CV

## IN THE INTEREST OF T.R.M. AKA T.M. AND T.J.W. AKA T.W., CHILDREN

**On Appeal from the 314th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2013-05924J**

## M E M O R A N D U M   O P I N I O N

Appellant T.R.R. aka T.R.W. (the Mother) appeals the termination of her parental rights to the Children, T.R.M. aka T.M. (the Daughter) and T.J.W. aka T.W. (the Son).[1] In her sole issue, the Mother challenges the legal and factual sufficiency of the evidence to support the trial court's finding that termination of her parental rights is in the Children's best interest. Concluding that the evidence is sufficient, we affirm.

---

[1] To protect the identities of the minors, we have not used the names of the Children, parents, or other family members. *See* Tex. R. App. P. 9.8. The Children's alleged father's rights were also terminated, but he is not a party to the appeal. In addition, an older half-sibling with a different father was initially named in this proceeding, but she was returned to her father's family and is not a subject of this appeal.

# I. BACKGROUND

On September 27, 2013, the Department of Family and Protective Services (the Department) received a referral alleging neglectful supervision and physical abuse of the Children. Specifically, it was alleged that the Mother's common-law husband (the Husband) abused the Children and the Mother did nothing to stop the abuse.

The record reflects that the Daughter was born November 28, 2006, and the Son was born December 8, 2007. When the referral to the Department was made, the Mother had already voluntarily placed the Children, who were then ages six and five, with relatives for about three or four months during the summer of 2013. The Daughter was left with her maternal grandmother (the Grandmother) and the Son was with the Mother's cousin (the Cousin). The Mother did not return to get the Children in the fall as planned, and she informed relatives that she did not intend to return for the Children. The relatives reported the Children had bruises on their lower backs and upper arms inflicted by the Husband. The relationship between the Mother and the Husband was described as "extremely abusive," and the Husband was alleged to have threatened the Mother and Children with a firearm. The relatives also reported the Mother had an "active addiction to cocaine and marijuana." The Mother had not visited the Children during the time they were left with her relatives. The relatives were unable to enroll the Children in school because the Mother had not provided the necessary documentation, including their birth certificates and social security numbers.

The Department initiated an investigation of the referral, and the initial investigative caseworker assigned to the case, Jamilla Bluford, interviewed the Cousin on September 27, 2013. The Cousin stated she did not know the Mother's whereabouts. The Cousin confirmed that she had been unable to enroll the Son in school because she did not have the necessary legal documents and the Mother had

ignored her requests to provide them. The Cousin reported the Mother is in a "horrible" relationship and her Husband is very controlling. She also reported that both the Mother and her Husband were "on cocaine and are not fit to provide for the Children."

The caseworker interviewed the Grandmother on October 2, 2013. The Grandmother confirmed that the Daughter was also not enrolled in school because the Mother had not provided a birth certificate or social security card. In addition, the Grandmother stated the Mother had not provided a Medicaid card so that she could provide adequate medical care for the Daughter. The Grandmother claimed she had no contact information for the Mother, but she stated she would try to find her and tell her about the investigation. Shortly thereafter, the Grandmother called the Department's caseworker, informing her she had located the Mother and allowed her to come inside her home to speak on the phone. The Mother informed the caseworker she was homeless and living on the street. When the Mother was told she would be required to undergo drug screening, the Mother became enraged, screamed obscenities, grabbed the Children and left. The Department summoned the police to search for the Mother and the Children, but the Mother returned the Children to the Grandmother later that evening.

The Grandmother brought the Children to the Department for interviews the next day, and a safety plan was instituted in which the Grandmother agreed not to return the Children to their Mother. The Grandmother also agreed that she would not permit her husband to have unsupervised contact with the Children because of previous allegations that he sexually abused the Children's half-sister. At that time, the Grandmother's husband was reported to no longer reside at the Grandmother's home.

The Mother contacted the Department on October 9, 2013, and set up an appointment for an interview. She did not show up for the appointment, however.

3

As a result of its investigation, the Department made the decision to seek temporary conservatorship of the Children and filed suit on October 25, 2013. Because the Department had concerns that the Grandmother's husband continued to be around the Daughter, the Department also moved for an emergency order for protection of the Children, which was signed that day. The Department was named temporary managing conservator of the Children, and they were both placed with the Cousin.

The Mother's court-appointed attorney ad litem appeared with the Mother at the adversary hearing on November 5, 2013. At the hearing, caseworker Bluford testified that the Mother was homeless. The caseworker stated the Mother would be permitted to visit the Children if she tested clean for drugs at the conclusion of the hearing. The Mother testified at the hearing that she was comfortable with the Children's placement with her Cousin. The Mother stated that she was staying at the home of her Husband's cousin. When asked for her address, the Mother testified she did not know because she just started living there. The Mother underwent drug testing after the hearing and the results were positive for cocaine and marijuana. As a result, the Mother was ordered to have no contact with the Children until her drug tests were negative for illegal drugs.

In December 2013, the Department requested removal of the Children from the Cousin's residence, alleging the placement did not meet the Children's needs. The new caseworker assigned to the case, Linda Phillips, testified at the December 12, 2013, status hearing that the Department's home study of the Cousin's home was not approved. The Department had discovered that the Cousin was financially dependent on her parents and she had no car. The Children were sleeping on the living room sofa, and the Son was reportedly acting out sexually. In addition, the Department had recently learned that the Cousin permitted the Mother to be around the Children even though she was not allowed to have contact with them. The

4

Cousin called the police the second time the Mother visited, however, because the Mother brought her Husband, who was smoking marijuana in the car. The caseworker testified that at the time of the status hearing, the Mother's whereabouts were unknown. The trial court granted the Department's request and placed the Children in foster care.

The Mother's family service plan was filed with the court on December 10, 2013. The tasks set out in the plan included requirements that the Mother complete domestic violence and parenting classes, undergo random drug tests and test negative at all times, maintain stable housing and employment for more than six months, and complete a drug assessment and follow all recommendations. On December 12, 2013, the trial court ordered the Mother to comply with the plan. On December 17, 2013, the trial court issued additional temporary orders requiring the Mother to complete substance abuse treatment, undergo a psychological evaluation, and participate in counseling.

The court conducted regular status and permanency hearings to monitor the Children's status and the Mother's progress in completing her court-ordered services. In January 2014, the trial court appointed Child Advocates, Inc. (the Advocate) as guardian ad litem for the Children. The Advocate filed periodic reports with the court.

The case was tried to the court on August 21, 2014. Most of the Department's exhibits were admitted into evidence without objection. Caseworker Bluford's affidavit setting out the bases for the Children's removal was admitted, and the Department's permanency plan, in which the Department recommended termination of parental rights and unrelated adoption, was also admitted. In addition, the Advocate's final report was admitted. Records from the National Screening Center detailing the Mother's positive drug tests were also admitted. A report from the Texas Alcohol and Drug Testing Service was admitted after an

objection was overruled that the business record, while timely filed, had been served late.

The Mother testified at trial. Caseworker Phillips testified about the circumstances leading to the Department's involvement with the Children resulting in their placement in foster care. In addition, Phillips testified about the Mother's failure to complete the tasks in her service plan. Phillips also testified about the Children's placement, and she explained the reasons for her recommendation that termination of the Mother's parental rights is in the Children's best interest. The Advocate also testified at trial and recommended termination of the Mother's parental rights because she had not shown she could provide a safe environment for the Children.

At the conclusion of the trial, the court granted the Department's request for termination of the Mother's parental rights to the Children. On September 4, 2014, the trial court signed a final judgment reciting that the Mother's parental rights were terminated based on findings that termination is in the Children's best interest and that the Mother committed acts establishing the predicate termination grounds set out in subsections E and O of Texas Family Code Section 161.001(1). Tex. Fam. Code Ann. §§161.001(1)(E) & (O); 161.001(2) (West 2014). The Department was appointed sole managing conservator of the Children. The Mother filed a timely notice of appeal.

## II. BURDEN OF PROOF AND STANDARDS OF REVIEW

Parental rights can be terminated upon proof by clear and convincing evidence that (1) the parent has committed an act prohibited by section 161.001(1) of the Family Code; and (2) termination is in the best interest of the child. Tex. Fam. Code Ann. § 161.001(1), (2) (West 2014); *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009). The Mother's sole issue on appeal challenges the legal and factual

sufficiency of the evidence to support the trial court's finding that termination is in the Children's best interest.

Involuntary termination of parental rights is a serious matter implicating fundamental constitutional rights. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985); *In re D.R.A.*, 374 S.W.3d 528, 531 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Although parental rights are of constitutional magnitude, they are not absolute. *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002) ("Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right.").

Due to the severity and permanency of the termination of parental rights, the burden of proof is heightened to the clear and convincing evidence standard. *See* Tex. Fam. Code Ann. § 161.001 (West 2014); *In re J.F.C.*, 96 S.W.3d 256, 265–66 (Tex. 2002). "Clear and convincing evidence" means "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007 (West 2014); *accord In re J.F.C.*, 96 S.W.3d at 264. This heightened burden of proof results in a heightened standard of review. *In re C.M.C.*, 273 S.W.3d 862, 873 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

In reviewing the legal sufficiency of the evidence in a parental termination case, we must consider all the evidence in the light most favorable to the finding to determine whether a reasonable fact finder could have formed a firm belief or conviction that its finding was true. *In re J.O.A.*, 283 S.W.3d at 344; *In re J.F.C.*, 96 S.W.3d at 266. We assume that the fact finder resolved disputed facts in favor of its finding if a reasonable fact finder could do so, and we disregard all evidence that a reasonable fact finder could have disbelieved. *In re J.O.A.*, 283 S.W.3d at 344; *In re J.F.C.*, 96 S.W.3d at 266.

We consider and weigh all of the evidence, including disputed or conflicting evidence, in reviewing termination findings for factual sufficiency of the evidence. *In re J.O.A.*, 283 S.W.3d at 345. "If, in light of the entire record, the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that a fact finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id*. We give due deference to the fact finder's findings and we cannot substitute our own judgment for that of the fact finder. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). The fact finder is the sole arbiter when assessing the credibility and demeanor of witnesses. *Id*. at 109.

## III. ANALYSIS

### A. Unchallenged Predicate Termination Findings under Section 161.001(1)

The trial court made predicate termination findings that the Mother had committed acts establishing the grounds set out in subsections E and O, which provide that termination of parental rights is warranted if the factfinder finds by clear and convincing evidence, in addition to the best-interest finding, that the parent has:

(E) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child;

. . .

(O) failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child; . . . .

Tex. Fam. Code Ann. § 161.001(1)(E) & (O) (West 2014).

The Mother has not challenged the predicate termination findings under section 161.001(1). Unchallenged predicate findings are binding on the appellate court. *See In re E.A.F.,* 424 S.W.3d 742, 750 (Tex. App.—Houston [14th Dist.] 2014, pet. denied); *see also IKB Indus. (Nigeria) Ltd. v. Pro–Line Corp.,* 938 S.W.2d 440, 445 (Tex. 1997). These unchallenged predicate findings can therefore support the best interest finding. *See In re C.H.,* 89 S.W.3d at 28 (holding that the same evidence may be probative of both section 161.001(1) predicate grounds and best interest).

## B. Best-Interest Finding Under Section 161.001(2)

We review the entire record in deciding a challenge to the court's best interest finding. *In re E.C.R.*, 402 S.W.3d 239, 250 (Tex. 2013). There is a strong presumption that the best interest of a child is served by keeping the child with his or her natural parent. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006); *In re D.R.A.*, 374 S.W.3d at 533. Prompt and permanent placement of the child in a safe environment is also presumed to be in the child's best interest. Tex. Fam. Code Ann. § 263.307(a) (West 2014).

Courts may consider the following nonexclusive factors in reviewing the sufficiency of the evidence to support the best interest finding, including: the desires of the child; the present and future physical and emotional needs of the child; the present and future emotional and physical danger to the child; the parental abilities of the persons seeking custody; the programs available to assist those persons seeking custody in promoting the best interest of the child; the plans for the child by the individuals or agency seeking custody; the stability of the home or proposed placement; acts or omissions of the parent which may indicate the existing parent-child relationship is not appropriate; and any excuse for the

parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976). This list is not exhaustive, and evidence is not required on all of the factors to support a finding terminating parental rights. *Id.*; *In re D.R.A.*, 374 S.W.3d at 533.

### *1. Present and Future Physical and Emotional Danger to the Children*

We begin our analysis by reviewing the evidence supporting the predicate termination grounds found by the trial court that also support a finding that termination is in the best interest of the Children. *See In re C.H.*, 89 S.W.3d at 27. A parent's ability to provide a child with a safe environment is a primary consideration in determining the child's best interest. *In re A.C.*, 394 S.W.3d 633, 642 (Tex. App.—Houston [1st Dist.] 2012, no pet.). The Mother has not challenged the trial court's finding that she engaged in conduct, or placed the Children with persons who engaged in conduct, that endangered the Children's physical or emotional well-being. *See* Tex. Fam. Code Ann. § 161.001(1)(E) (West 2014).

"To endanger" means to expose a child to loss or injury or to jeopardize a child's emotional or physical health. *See In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996). While endangerment often involves physical endangerment, the statute does not require that conduct be directed at a child or that the child actually suffer injury; rather, the specific danger to the child's well-being may be inferred from parents' misconduct alone. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *In re R.W.*, 129 S.W.3d 732, 738–39 (Tex. App.—Fort Worth 2004, pet. denied). The record contains the following evidence supporting the physical and emotional danger to the Children.

#### *a. Drug Use*

The Supreme Court of Texas has recognized that a parent's use of narcotics and the resulting impact on her ability to parent may qualify as an endangering

course of conduct. *In re J.O.A.*, 283 S.W.3d at 345*; see also Edwards v. Tex. Dep't of Protective Servs.*, 946 S.W.2d 130, 138 (Tex. App.—El Paso 1997, no writ) (stating a parent's drug use is a condition that can endanger a child's physical or emotional well-being and indicate instability in home environment). A parent's drug use also supports a finding that termination is in the best interest of the child. *See In re M.R.*, 243 S.W.3d 807, 821 (Tex. App.—Fort Worth 2007, no pet.); *see also In re M.S.L.,* No. 14-14-00382-CV, 2014 WL 5148157, at *6 (Tex. App.—Houston [14th Dist.] Oct. 14, 2014, no. pet.) (mem. op.). The factfinder can give "great weight" to the "significant factor" of drug-related conduct. *In re K.C.*, 219 S.W.3d 924, 927 (Tex. App.—Dallas 2007, no pet.); *see also In re J.N.H.*, No. 02–11–00075–CV, 2011 WL 5607614, at *8 (Tex. App.—Fort Worth Nov. 17, 2011, no pet.) (mem. op.) (considering a parent's criminal and drug histories in affirming a trial court's decision that termination was in the best interest of the child).

The record here shows that the Mother tested positive for illegal drugs while the Children were in the Department's care. The Mother tested positive for cocaine and marijuana at three drug tests, but she denied cocaine use. The Mother's drug use was well known to her family. The Cousin told the Department's caseworker that the Mother and her husband were "on cocaine," and the Grandmother suspected the Mother was addicted to cocaine. In June 2013, the Mother missed a court-ordered drug test due to her failure to appear at the scheduled hearing. In addition, caseworker Phillips testified that she had been unable to reach the Mother on several occasions to conduct random drug tests. A March 26, 2014, drug test was negative, but the next month, in April, the results were again positive for cocaine and marijuana. The caseworker acknowledged that two tests shortly before trial were negative for illegal substances.

The Advocate testified that the Mother denied all drug use despite the positive tests. For this reason, the Advocate stated "it's hard to believe what she

says." The trial court, as the fact finder, evaluated the credibility of the Mother's denials, and we may not disturb that determination. *In re H.R.M.*, 209 S.W.3d at 108. The Advocated pointed out that despite the possibility that the Mother might lose her parental rights, the Mother failed to participate in the rehabilitative services designed to address her drug use.

The evidence at trial confirmed that the Mother continued to use drugs in the face of a court order conditioning her reunification with her Children on her ability to remain drug-free. Continued illegal drug use after a child's removal is conduct that jeopardizes parental rights and may be considered as establishing an endangering course of conduct and showing that termination is in the best interest of the child. *Cervantes–Peterson v. Tex. Dep't of Family & Protective Servs.*, 221 S.W.3d 244, 253–54 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (en banc).

### b. Domestic Violence and Abusive Conduct

A parent's abusive or violent conduct can produce a home environment that endangers a child's well-being. *In re J.I.T.P.*, 99 S.W.3d 841, 845 (Tex. App.—Houston [14th Dist.] 2003, no pet.). "Domestic violence, want of self-control, and propensity for violence may be considered as evidence of endangerment." *Id.* at 845–46 (stating that such abuse is a factor under *Holley*). The factfinder may infer from past conduct endangering a child's well-being that similar conduct will recur if the child is returned to the parent. *In re M.R.J.M.*, 280 S.W.3d 494, 502 (Tex. App.—Fort Worth 2009, no pet.).

The Department found that the allegation that the Husband abused the Son was substantiated. Caseworker Phillips testified that the reason the Department initially removed the Children from their Mother's care was because the Mother had allowed the Husband to physically abuse the Son. She testified that the Son had been hit with a stick and the Husband threatened the Children with a gun. In

addition, both Children had bruising on their lower backs and upper arms. The Advocate was also concerned that the Husband reportedly shot a gun in the house while the Children were there. Although the Mother told the caseworker her Husband would not hurt the Children, she has not challenged the endangerment finding and it is binding on this court. Both the caseworker and the Advocate expressed concern that the Mother was still with the Husband at the time of trial, despite the abuse allegations. In addition, the Mother did not deny that the Husband engaged in abusive conduct toward her. The Cousin, who had cared for the Son, told the Department's caseworker that the Mother was in a "horrible" relationship with her Husband. The Husband burned the Mother's clothes, stole money from her, and physically abused the Mother.

This evidence of violence and abuse supports the trial court's best-interest finding. *See In re J.I.T.P.*, 99 S.W.3d at 846 (stating domestic violence, even when the child is not the intended victim, supports a finding that termination is in the child's best interest). One parent's endangerment of a child by permitting exposure to the other parent's dangerous conduct is a relevant consideration in determining a child's best interest. *See In re O.N.H.*, 401 S.W.3d 681, 684–85 (Tex. App.—San Antonio 2013, no pet.). The factfinder reasonably could have considered that the Husband's acts of violence would continue in the future. *See Walker v. Texas Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

### c. Unsuccessfully Treated Mental Illness

Mental illness alone is not grounds for terminating the parent-child relationship. *Maxwell v. Tex. Dep't of Family & Protective Servs.,* No. 03–11–00242–CV, 2012 WL 987787, at *9 (Tex. App.—Austin Mar. 23, 2012, no pet.) (mem. op.). Unsuccessfully treated mental illness can expose a child to endangerment, however, and is a factor the court may consider. *See id.* at *10; *In*

*re L.L.F.,* No. 02–11–00485–CV, 2012 WL 2923291, at *15 (Tex. App.—Fort Worth July 19, 2012, no pet.) (mem. op.) (considering a parent's failure to take medication to treat mental health issues as a factor in creating an environment that endangers the child's emotional or physical well-being); *In re J.I.T.P.*, 99 S.W.3d at 845 (considering a parent's mental health and non-compliance with her medication schedule as factors in endangering the child).

The record contains evidence related to the Mother's mental health and her failure to participate in services to treat her condition. Caseworker Phillips testified that the Mother reported that she had been diagnosed as having bipolar disorder and schizophrenia. The Mother advised the Department that she receives medication from the Mental Health Mental Retardation Authority (MHMRA). The Mother testified that she currently takes several medications and sees a doctor once a month. The caseworker testified the Mother did not participate in court-ordered services, including a psychological evaluation and counseling. In September 2013, the Mother told the caseworker she had been hospitalized and provided an admission slip showing she was involuntarily admitted to the Harris County Psychiatric Center for suicidal ideation and auditory hallucinations. The Mother did not provide any other documentation, and the caseworker was unable to obtain records from the admission, however. The record does not reflect that the Mother was treated for these conditions.

This evidence of the Mother's failure to comply with services to improve her mental health is a factor that the trial court could have considered in finding that the Mother engaged in a course of conduct that endangered the physical and emotional well-being of the Children. *See In re J.I.T.P.*, 99 S.W.3d at 845–46 (finding mother's suicidal thoughts and history of noncompliance with medication schedule relevant to endangerment and best-interest analyses); *see also Liu v. Dep't of Family & Protective Servs.*, 273 S.W.3d 785, 798 (Tex. App.—Houston [1st

Dist.] 2008, no pet.) (considering mother's mental health issues, hospitalizations, violent history, noncompliance with medications in concluding termination was in the child's best interest).

### d. Lack of Stability

Stability and permanence are paramount in the upbringing of children. *In re T.D.C.*, 91 S.W.3d 865, 873 (Tex. App.—Fort Worth 2002, pet. denied). Failure to maintain stability endangers a child's physical and emotional well-being. *See In re A.B.*, 412 S.W.3d 588, 599 (Tex. App.—Fort Worth 2013), *aff'd,* 437 S.W.3d 498 (Tex. 2014). Evidence of a parent's unstable lifestyle also can support a factfinder's conclusion that termination of parental rights is in the child's best interest. *In re S.B.*, 207 S.W.3d 877, 887 (Tex. App.—Fort Worth 2006, no pet.). A parent's failure to show that she is stable enough to parent a child for any prolonged period entitles the trial court "to determine that this pattern would likely continue and that permanency could only be achieved through termination and adoption." *In re B.S.W.*, No. 14-04-00496-CV, 2004 WL 2964015, at *9 (Tex. App.—Houston [14th Dist.] Dec. 23, 2004, no pet.) (mem. op.).

The Department provided evidence that the Mother has been homeless and living on the street. The Mother left the Children with relatives and did not return for them as planned. The relatives had no way to contact the Mother. The Mother is not employed and has no means to support the Children. The factfinder reasonably could have concluded the Mother's lack of stability supported the finding that termination is in the Children's best interest. *See In re A.C.*, 394 S.W.3d at 643 (considering parents' history of homelessness in concluding their inability to provide a safe and stable environment supported the trial court's finding that termination was in the child's best interest); *see also L.Z. v. Texas Dep't of Family & Protective Servs.*, No. 03–12–00113–CV, 2012 WL 3629435, at *10–11 (Tex. App.—Austin Aug. 23, 2012, no pet.) (mem. op.) (holding the best-

15

interest finding was supported where the father had a history of instability, domestic violence, and criminal activity).

### 2. Non-Compliance with Services

The Mother also has not challenged the trial court's finding that she failed to comply with the provisions of a court order establishing the actions necessary for her to obtain the return of the Children after their removal because of abuse or neglect. *See* Tex. Fam. Code Ann. § 161.001(1)(O) (West 2014). In determining the best interest of a child in proceedings for termination of parental rights, the trial court may properly consider that the parent did not comply with the court-ordered service plan for reunification with the Child. *See In re E.C.R.*, 402 S.W.3d at 249 ("Many of the reasons supporting termination under subsection O also support the trial court's best interest finding."); *see also In re E.A.F.,* 424 S.W.3d at 752 (considering the failure to participate in services required for reunification in reviewing the best-interest determination).

The Mother's family service plan was admitted into evidence. The court-ordered service plan included requirements that the Mother complete domestic violence and parenting classes, undergo random drug tests and test negative at all times, attend all court hearings, conferences and visits, maintain stable housing for more than six months and provide a copy of her lease, develop a support system, complete a drug assessment within one month and follow all recommendations, avoid criminal activity, participate in a psychosocial evaluation and follow all recommendations, including therapy, and maintain documented employment for more than six months. The trial court issued additional temporary orders requiring the Mother to complete substance abuse treatment, complete a psychological evaluation, and participate in counseling.

Caseworker Phillips testified about the Mother's failure to complete the

tasks in her service plan. While the Mother made some attempts to comply with her court-ordered family service plan for reunification with the Children, she did not complete the requirements set out in the plan. The Mother failed to obtain stable housing or employment for a six-month period. She did not complete psychosocial or psychological evaluations, a drug assessment, or engage in therapy. She did not attend several court hearings, and in June she did not show up for a court-ordered drug test due to her failure to appear at the hearing. The Mother tested positive for cocaine and marijuana at numerous drug tests, including a test just a few months before trial.

The Mother testified at trial that she completed domestic violence and parenting classes. She also testified she had lived in a one-bedroom house for six months and she planned to obtain a two-bedroom home. The Mother did not provide a copy of a lease as required by her service plan, however. She also acknowledged she had no "stuff" for the Children. The Mother did not respond when asked for the address of her home. The Mother stated she had obtained a job at a warehouse and she would start the following month.

The caseworker had not been able to assess the mother's residence or verify that she had obtained a job. The trial court evaluated the credibility of the Mother's testimony, and we may not disturb the factfinder's credibility determinations. The factfinder is the sole arbiter when assessing the credibility and demeanor of witnesses. *In re H.R.M.*, 209 S.W.3d at 108. We are not to "second-guess the trial court's resolution of a factual dispute by relying on evidence that is either disputed, or that the court could easily have rejected as not credible." *In re L.M.I.*, 119 S.W.3d 707, 712 (Tex. 2003). In addition, the factfinder may conclude that a parent's changes shortly before trial are too late to have an impact on the best-interest determination. *See In re Z.C.*, 280 S.W.3d 470, 476 (Tex. App.—Fort Worth 2009, pet. denied) (explaining that a father's "efforts to improve his ability

17

to effectively parent on the eve of trial [were] not enough to overcome a decade of poor parenting and neglect" in evaluating the best interest of the children). The evidence of the Mother's failure to complete her court-ordered services supports the trial court's best-interest finding. *See In re A.D.*, 203 S.W.3d 407, 411–12 (Tex. App.—El Paso 2006, pet. denied) (affirming termination of parental rights because mother failed to meet family service plan's material requirements including drug assessment, finding a job, and providing a safe home).

### 3. Parenting Abilities

The factfinder may consider a parent's parenting skills in a best-interest analysis. *See In re C.A.J.*, 122 S.W.3d 888, 893 (Tex. App.—Fort Worth 2003, no pet.). As part of our review of a finding that termination is in the Children's best interest, we may also consider the Mother's past performance as a parent in evaluating her fitness to provide for the Children. *See In re C.H.*, 89 S.W.3d at 28. Although evidence of past misconduct or neglect alone may not be sufficient to show present unfitness, a fact finder may measure a parent's future conduct by her past conduct indicating that it is in a child's best interest to terminate her parental rights. *See In re A.N.D.*, No. 02-12-00394-CV, 2013 WL 362753, at *2 (Tex. App.—Fort Worth Jan. 31, 2013, no pet.) (mem. op.).

The Mother was living on the streets when this case was initiated. The Mother had not parented her Children, and instead left them with relatives without visiting or returning for them at the end of the summer as planned. In addition, the Children's caregivers did not know how to reach the Mother. The record reflects the Mother's neglect had been detrimental to the Children. Both Children were behind academically and had behavior problems. The Daughter had to repeat first grade because of reading problems. The caseworker explained that the Children were behind because this was the first time they had attended school. Both Children also had behavior issues. The Daughter failed to follow directions and

blamed others for her behavior. The Son was argumentative, defiant, and had screaming tantrums. He was diagnosed with Attention Deficit Hyperactivity Disorder (ADHD) and began taking medication to address the condition.

Caseworker Phillips acknowledged the Mother maintained contact with the Department and stated she wanted to see her Children and have custody of the Children returned to her. The Mother testified she loves her Children and is fighting to get them back. A mother's love for her children, however, will not obviate her inability to provide her children with a safe, stable home. *See In re K.C.*, 88 S.W.3d 277, 279 (Tex. App.—San Antonio 2002, pet. denied).

A parent's efforts to improve or enhance parenting skills are relevant in determining whether a parent's conduct results in endangerment. *See In re D.T.*, 34 S.W.3d 625, 640 (Tex. App.—Fort Worth 2000, pet. denied). The Mother asserts she participated in parenting classes and a domestic violence awareness program, but she failed to demonstrate any learned behavior to help her parent her Children safely. In addition, the Mother was still with her abusive Husband at the time of trial. The lack of evidence that the Mother could parent the Children supports the best-interest finding. *See H.N. v. Dep't of Family & Protective Servs.*, 397 S.W.3d 802, 814 (Tex. App.—El Paso 2013, no pet.) (stating the father's failure to demonstrate his parenting abilities supported the finding that termination was in the best interest of the child).

### 4. Children's Desires, Needs, and Proposed Placement

The Children were very young at the time of trial and our record contains no evidence of the Children's desires. When a child is too young to express his desires, the factfinder may consider that the child has bonded with the foster family, is well cared for by them, and has spent minimal time with a parent. *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.). The

evidence shows the Children had bonded with the foster parents and were well-cared for by them. *See In re J.M.*, 156 S.W.3d 696, 706 (Tex. App.—Dallas 2005, no pet.). In contrast, they had not seen their Mother for several months while she left them with relatives, and the Mother was not permitted to visit the Children during the ten-month period this case was pending because of her positive drug tests. Evidence that a parent has failed to maintain any significant contact with the Children supports a trial court's determination that termination is in the child's best interest. *See H.N.*, 397 S.W.3d at 814.

Lack of stability, including a stable home, supports a finding that the parent is unable to provide for a child's emotional and physical needs. *See In re G.M.G.*, 444 S.W.3d at 46, 60 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *see also Doyle v. Tex. Dep't of Protective & Regulatory Servs.*, 16 S.W.3d 390, 398 (Tex. App.—El Paso 2000, pet. denied) (holding that a parent's failure to provide a stable home and provide for a child's needs contributes to a finding that termination of parental rights is in the child's best interest). The evidence of the Mother's lack of stability is recited above. A child's need for permanence through the establishment of a "stable, permanent home" has sometimes been recognized as the paramount consideration in a best-interest determination. *See In re K.C.*, 219 S.W.3d at 931.

Because of the importance of stability to the physical and emotional needs of the Children, evidence about the present and future placement of the Children is relevant to the best-interest determination. *See C.H.*, 89 S.W.3d at 28. The Children were placed together in a foster home and have been there since December 2013. The record evidence recites that the foster home is safe and stable, and the foster parents properly care for the Children's needs and provide necessary services. The foster parents are providing for the Children's medical, dental, developmental, educational, and emotional needs. They took the Children to all of

their medical appointments, and they had purchased school clothes for the Children after the Mother's relatives refused to deliver the Children's clothes. Phillips testified that the Mother was "not able to provide a stable loving home for the kids." In her opinion, it is in the Children's best interest to terminate the Mother's parental rights and keep the Children in the foster home.

Records admitted at trial show both Children received counseling while in foster care. The Advocate's report stated that both Children engaged in weekly therapy. The Children were also to receive tutoring when school resumed in the fall. By the time of trial, both children were doing better and had adjusted well to the foster home. The Son was in kindergarten and ready to start first grade. He started showing improvements after he began taking medication for ADHD. The Daughter had begun taking Prozac for depression.

The Advocate, who was the Children's guardian ad litem, testified that in her opinion, termination of the parents' parental rights is in the best interest of the Children. *See* Tex. Fam. Code Ann. § 107.002(e) (West 2014) (setting out the guardian ad litem's duty to file reports and testify regarding her recommendations relating to the best interests of the child and the reasons for the recommendations). The Advocate recommended that the Children remain in their current foster home until an adoptive home could be found for them. The Advocate argued to the court that the Mother had not established she could provide a safe environment for the Children. The Advocate's report filed on August 21, 2014, the day of trial, also contained the same recommendations.

Caseworker Phillips testified the Children have no special needs and are "adoptable," but the current foster home is not an adoptive foster home. The Department continues to search for an adoptive home. The Mother argues that termination is not in the Children's best interest because the foster home in which the Children are placed is not an adoptive home. Plans for adoption are relevant,

but evidence of definitive plans is not dispositive in a parental termination case filed by the State. *In re C.H.*, 89 S.W.3d at 28.

### *5. Statutory Factors in Determining the Best Interest of the Children*

The Texas Family Code sets out factors to be considered in evaluating the parent's willingness and ability to provide the child with a safe environment, including: (1) the child's age and physical and mental vulnerabilities; (7) whether there is a history of assaultive or abusive conduct by the family; (8) whether there is a history of substance abuse by the family; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; and (12) whether the child's family demonstrates adequate parenting skills, including providing the child with minimally adequate health and nutritional care, a safe physical home environment, and an understanding of the child's needs and capabilities. Tex. Fam. Code Ann. § 263.307(b) (West 2014); *In re R.R.,* 209 S.W.3d at 116.

The evidence recited above also supports the court's best-interest finding based on the statutory factors for evaluating whether the Mother is willing and able to provide the Children with a safe environment, which is presumed to be in their best interest. *See* Tex. Fam. Code Ann. § 263.307 (West 2014). The Children are young and dependent on their caregiver to provide for their needs. *See id.* at (b)(1). The Department presented evidence of the Mother's inability to protect the Children. The Mother's lack of a stable home and her failure to stop the abusive behavior that the Children were exposed to before entering foster care supports the finding that the Mother is unable to provide the Children with a safe environment. *See id.* at (b)(7), (12). The Mother also has a history of abusing illegal drugs. *See id.* at (b)(8). A pattern of illegal drug use supports the conclusion that the Mother

was not willing and able to provide the Children with a safe environment. *See P.W. v. Dep't of Family & Protective Servs.*, 403 S.W.3d 471, 479 (Tex. App.—Houston [1st Dist.] 2013), pet. dism'd). The Mother did not undergo psychological evaluation and counseling, as ordered by the court. *See id.* at (b)(10). The Children are behind in school and have had behavior problems. These issues are being addressed in foster care. In contrast, the Mother did not demonstrate an ability to parent the Children, had not seen that they were enrolled in school, or provided them with a safe home environment. Any improvements that the Mother claimed to have made were very recent. *See id.* at (b)(11). Evidence of a recent improvement does not absolve a parent of a history of irresponsible choices. *See In re J.O.A.,* 283 S.W.3d at 346.

In sum, the record contains sufficient evidence to support the best-interest finding based on the Mother's lack of a safe, stable home environment, lack of stable employment, noncompliance with services, and drug use, even while these proceedings were pending. It was within the trial court's discretion to determine the weight and credibility of the Mother's testimony. *In re K.A.S.*, 131 S.W.3d 215, 229–30 (Tex. App.—Fort Worth 2004, pet. denied). The factfinder resolved all credibility issues and we may not disturb that determination. *See In re H.R.M.*, 209 S.W.3d at 108; *In re L.M.I.*, 119 S.W.3d at 712.

\* \* \*

Viewing all the evidence in the light most favorable to the judgment, we conclude that a factfinder could have formed a firm belief or conviction that termination of the Mother's parental rights is in the Children's best interest. *See J.F.C.*, 96 S.W.3d at 265–66. In light of the entire record, the disputed evidence favoring termination that a reasonable factfinder could not have credited is not so significant that it would prevent the factfinder from forming a firm belief or conviction that termination of the Mother's parental rights is in the Children's best

23

interest. *See In re H.R.M.*, 209 S.W.3d at 108. After considering the relevant factors under the appropriate standards of review, we hold the evidence is legally and factually sufficient to support the trial court's finding that termination of the parent-child relationship is in the Children's best interest. We therefore overrule the Mother's sole issue.

## IV. CONCLUSION

We have determined that legally and factually sufficient evidence supports the trial court's finding that termination of the Mother's parental rights is in the best interest of the Children. Therefore, the trial court's judgment is affirmed.


/s/    J. Brett Busby
       Justice


Panel consists of Justices Jamison, Busby, and Brown.