**Affirm and Opinion Filed September 2, 2022**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-22-00426-CV**

**IN THE INTEREST OF V.E.B. AND C.B., CHILDREN**

**On Appeal from the 397th Judicial District Court**
**Grayson County, Texas**
**Trial Court Cause No. FA-21-0463**

## MEMORANDUM OPINION
Before Justices Myers, Carlyle, and Goldstein
Opinion by Justice Myers

The children's Mother appeals the trial court's judgment terminating the parent–child relationship between her and the children. Mother brings two issues on appeal contending (1) her appointed counsel was ineffective for failing to request an extension of the mandatory dismissal date under section 263.401 of the Family Code; and (2) the evidence was insufficient to prove by clear and convincing evidence that termination of the parent–child relationship between Mother and her children was in the children's best interest. We affirm the trial court's judgment.

## BACKGROUND

This case began in Tarrant County as one for neglectful supervision by Mother of her two young children, V. and C. The Tarrant County branch of the Texas

Department of Family and Protective Services had a safety plan requiring that Mother not be left alone with the children and that the maternal grandmother supervise Mother's contact with the children. The Tarrant County report showed the Department had concerns about Mother's mental health issues. The case was transferred to Grayson County on February 12, 2021.

In April 2021, the Department received a report that Mother was doing drugs and leaving the children alone for long periods of time. There was also a report of an incident where Mother hit Grandmother and Grandmother's friend who was at the house. Mother then left without telling Grandmother, leaving the children alone. Grandmother told the Department she was not sure she could keep the children safe. The Department removed the children and placed them in foster care and filed suit to terminate Mother's parental rights.

On June 3, 2021, the Department filed a court-ordered service plan for Mother to complete. Mother did not begin any of the services. Mother refused to take most of the random drug tests. Mother took one hair strand test, and she tested positive for methamphetamine. Mother did not participate in any of the scheduled visitations with the children.

When the case began, Mother was on parole for possession of methamphetamine. She had been sentenced to sixteen years' imprisonment and had served four years before she was released on parole. Her conditions of parole included wearing an ankle monitor, complying with the electronic monitoring

program, and obtaining mental-health treatment. Mother did not obtain any mental-health treatment. The parole office also required Mother to take drug tests. Mother tested positive for methamphetamine in April and May 2021.

Mother was arrested on June 21, 2021, for a parole violation. She was transferred to an intermediate sanction facility on December 2, 2021, and she was scheduled to be released sixty days after the trial. The trial was on March 28, 2022, so Mother's release date was scheduled to be on or about May 27, 2022. However, her parole officer testified she would not be released if she did not have a plan of where she would live.

At the trial, the Department's caseworkers testified about Mother's failed drug tests, her lack of cooperation with the Department, her failure to begin any of the services before being arrested, and her failure to complete any of the service materials the Department sent her while she was incarcerated for the parole violation. They also testified that V., who was about two years old when removed from Mother's and Grandmother's care, required speech therapy. They also testified that the children were thriving in their foster home. V. now speaks well thanks to the speech therapy and the foster parents' care. The foster parents plan to be the "forever home" for the children.

After the parties rested and closed, the trial court found the Department had proved by clear and convincing evidence the facts of section 161.001(b)(1)(D), (E), (N), (O), and (P), and that termination of the parent–child relationship between

–3–

Mother and the children was in the best interest of the children. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (N), (O), (P); *id.* § 161.001(b)(2).

## SUFFICIENCY OF THE EVIDENCE

In her second issue, Mother contends the evidence is insufficient to support the trial court's determination that termination of the parent–child relationship between Mother and the children was in the best interest of the children. *See id.* § 161.001(b)(2).

Because the fundamental liberty interest of parents in the care, custody, and control of their children is of constitutional dimensions, involuntary parental terminations must be strictly scrutinized. *Troxel v. Granville*, 530 U.S. 57, 65–66 (2000); *In re K.M.L.*, 443 S.W.3d 101, 112 (Tex. 2014). In such cases, due process requires the petitioner to justify termination by clear and convincing evidence. FAM. § 161.001(b); *In re E.N.C.*, 384 S.W.3d 796, 802 (Tex. 2012). "Clear and convincing evidence" is that "measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." FAM. § 101.007; *In re N.G.*, 577 S.W.3d 230, 235 (Tex. 2019) (per curiam); *In re N.T.*, 474 S.W.3d 465, 475 (Tex. App.—Dallas 2015, no pet.).

Our standard of review reflects the elevated burden at trial. *In re A.B.*, 437 S.W.3d 498, 502 (Tex. 2014); *In re A.T.*, 406 S.W.3d 365, 370 (Tex. App.—Dallas 2013, pet. denied). Under both legal and factual sufficiency standards, we consider all the evidence, defer to the factfinder's credibility determinations, and determine

–4–

whether the factfinder could reasonably form a firm belief or conviction that the grounds for termination were proven. *In re J.F.C.*, 96 S.W.3d 256, 265–66 (Tex. 2002); *In re N.T.*, 474 S.W.3d at 475. "The distinction between legal and factual sufficiency lies in the extent to which disputed evidence contrary to a finding may be considered." *In re A.C.*, 560 S.W.3d 624, 630–31 (Tex. 2018).

In conducting a legal sufficiency review of an order terminating parental rights, the reviewing court cannot ignore undisputed evidence contrary to the finding but must otherwise assume the factfinder resolved disputed facts in favor of the finding. *Id.* We "consider all the evidence, not just that which favors the verdict," and we assume the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. *In re N.T.*, 474 S.W.3d at 475. We disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. *Id.*

When reviewing the factual sufficiency of the evidence supporting a termination finding, we ask whether, in light of the entire record, the evidence is such that a factfinder could reasonably form a firm conviction about the truth of the allegations against the parent. *Id.*; *In re J.D.B.*, 435 S.W.3d 452, 463 (Tex. App.—Dallas 2014, no pet.). We must consider whether the disputed evidence is such that a reasonable factfinder could not have reconciled that disputed evidence in favor of its finding. *In re N.T.*, 474 S.W.3d at 475. If the disputed evidence is so significant

–5–

that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *Id.*

The supreme court has identified a nonexclusive list of factors that may be relevant to a best-interest determination: (1) the child's desires, (2) the child's current and future emotional and physical needs, (3) current and future emotional and physical dangers to the child, (4) the parental abilities of those seeking custody, (5) the programs available to help those individuals promote the child's best interest, (6) those individuals' plans for the child, (7) the home's or proposed placement's stability, (8) the parent's acts or omissions indicating that the existing parent–child relationship is not a proper one, and (9) any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). The legislature has also set out a similar list of factors for determining whether the child's parents are willing and able to provide the child with a safe environment. *See* FAM. § 263.307(b).[1]

---

[1] The factors under section 263.307(b) are:

(1) the child's age and physical and mental vulnerabilities;

(2) the frequency and nature of out-of-home placements;

(3) the magnitude, frequency, and circumstances of the harm to the child;

(4) whether the child has been the victim of repeated harm after the initial report and intervention by the department;

(5) whether the child is fearful of living in or returning to the child's home;

(6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home;

(7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home;

(8) whether there is a history of substance abuse by the child's family or others who have access to the child's home;

The *Holley* factors and the statutory factors focus on the best interest of the child, not the best interest of the parent, and are not exhaustive. *Dupree v. Tex. Dep't of Protective & Regulatory Servs.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ); *see In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). A best interest finding need not be supported by evidence of every *Holley* factor. *See In re C.H.*, 89 S.W.3d at 27. Although there is a strong presumption that maintaining the parent–child relationship serves the child's best interest, there is also a presumption that promptly and permanently placing the child in a safe environment is in the child's best interest. *In re D.W.*, 445 S.W.3d 913, 925 (Tex. App.—Dallas 2014, pet. denied); *see also* FAM. § 153.131(b).

---

(9) whether the perpetrator of the harm to the child is identified;

(10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision;

(11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time;

(12) whether the child's family demonstrates adequate parenting skills, including providing the child and other children under the family's care with:

(A) minimally adequate health and nutritional care;

(B) care, nurturance, and appropriate discipline consistent with the child's physical and psychological development;

(C) guidance and supervision consistent with the child's safety;

(D) a safe physical home environment;

(E) protection from repeated exposure to violence even though the violence may not be directed at the child; and

(F) an understanding of the child's needs and capabilities; and

(13) whether an adequate social support system consisting of an extended family and friends is available to the child.

FAM. § 263.307(b).

The children, at the time of trial, were three years old and fifteen months old. They could not care for themselves and were dependent on others for their physical and emotional health and safety. The Department was contacted because of the children being neglected, including Mother's using drugs and leaving the children alone for long periods of time. Mother tested positive for methamphetamine three times, and she refused to be tested on other occasions. Mother testified she had been diagnosed as bipolar and depressed. Mother testified that while she had been incarcerated, she had received injections to help with her bipolar symptoms. However, she also testified that before she was arrested, she had missed some mental health care appointments because she did not have transportation. Mother's parole officer testified that she was unaware of Mother receiving any mental health treatment while incarcerated.

Mother also failed to take a required parenting program and other services. When Mother was incarcerated, the Department sent her packets for her to complete the services while incarcerated. Mother was required to read through the information in the packets, complete the assignments, and mail them to the Department. Mother did not mail any of the assignments to the Department.

In the past, Mother showed an inability to provide the children with a safe, supportive home environment. Mother left the children alone for long periods of time. Mother would yell at V. for having a dirty diaper and would tell her she was disgusting. Mother testified she "got in a fight" with Grandmother, who was

supposed to be monitoring Mother's possession of the children, but Mother denied hitting Grandmother. Grandmother told the Department "it might be difficult for her to ensure the children's safety going forward." Mother's parole officer testified that Grandmother is uncertain if she will let Mother live with her after Mother is released. An investigator and a caseworker for the Department testified they did not think the children could be kept safe in the care of their Mother.

Mother used methamphetamine. She served four years of a sixteen-year sentence before she had the children. She continued to use methamphetamine after she was released. She tested positive for methamphetamine in March and April 2021. Despite her history of drug use, Mother questioned why she needed to have a substance-abuse evaluation, and she did not undergo the evaluation. Despite not undergoing any substance-abuse evaluation or therapy, Mother testified she believed she had solved her drug problem while incarcerated, and she stated she no longer used drugs.[2] She testified that in the past she had felt overwhelmed because she had just moved and had to unpack boxes and care for the children while her mother had

---

[2] Mother asserts on appeal that she completed substance-abuse treatment while incarcerated in the intermediate sanction facility for the parole violation. However, no evidence was admitted at trial showing the intermediate sanction facility provided substance-abuse treatment. Mother's parole officer testified that the facility did not provide substance-abuse treatment.

Mother also asserts in her brief that she began some of the services before she was arrested and incarcerated on June 21, 2021, citing reports in the clerk's record that were not admitted into evidence at trial. We have reviewed the reports Mother cites, and they show Mother had not begun any of the services before she was incarcerated.

to be at work sometimes.  She stated she now feels better that she is not on drugs and believes she is capable of caring for the children.

Mother testified her plan when she is released from incarceration is to move back in with her mother, get a job at the nearby Dollar General store until she can afford a car, and then get a better job.  Mother testified she does not know what she will do if Grandmother does not allow her to move in with her.  The caseworker testified Mother does not have stable housing.

The Department presented evidence that its plan for the children is to leave them with their current foster family, which the Department hopes will be the children's forever home.  That foster home is "a long term adoption motivated home."  The children, who are sisters, have bonded with each other and with the foster parents.  V., the older child, required speech therapy. When V. came into the Department's care, she could hardly talk and mostly mumbled.  The foster family worked with V. on her speech therapy, and now she talks "very well."   The Department's caseworker testified she has no concerns about the children remaining in their current placement "as their potential forever home."

From this evidence the trial court could conclude that due to her largely untreated mental-health and substance-abuse issues, Mother is unable to properly care for the children and provide them a safe environment.  Mother's past care of the children showed an inability to properly care for them, and Mother failed to take required parenting courses.  She did not demonstrate nurturing for the children but

–10–

in fact did the opposite by telling V. she was disgusting for having soiled her diaper. She did not demonstrate an understanding of the children's needs but instead left them alone for long periods of time. Mother testified she wanted the children back in her care, but she did not explain how she would get the mental-health and substance-abuse treatment that she needed to be able to properly care for the children. The children are now in a safe, stable environment in their foster-family placement where they are well cared for.

Mother argues on appeal that if the trial had been delayed for six months, then Mother would have been released from incarceration and "would have had ample time to complete her court-ordered services and begin having regular and productive visits with her children toward re-establishing a relationship with them in their best interest." However, Mother did not begin the services before she was incarcerated. She explained she was not able to get to the services because she did not have a car. Mother did not explain how she would be able to get to the services or visitation with the children after she is released. Her testimony shows she will not have access to a car after her release because she testified she was going to work at a nearby store until she could afford a car. Thus, it is not clear how Mother will be able to complete the services between her release and a later trial date.

Applying the *Holley* and statutory factors, the evidence was legally and factually sufficient for the trial court to find by clear and convincing evidence that

termination of the parent–child relationship between Mother and the children was in the children's best interest.

We overrule Mother's second issue.

## INEFFECTIVE ASSISTANCE OF COUNSEL

In her first issue, Mother contends she did not receive effective assistance of counsel because her attorney did not request an extension of the mandatory dismissal date and of the trial pursuant to section 263.401(b) of the Family Code. *See* FAM. § 263.401(b).

An indigent parent has a statutory right to appointed counsel in a parental-rights termination case. *Id.* § 107.013(a)(1); *In re M.S.*, 115 S.W.3d 534, 544 (Tex. 2003). The right "embodies the right to effective counsel." *In re M.S.*, 115 S.W.3d at 544. We evaluate an ineffective assistance of counsel claim under the standard set out in *Strickland v. Washington*, 466 U.S. 668 (1984). *Id.* at 544–45. A parent claiming ineffective assistance must show both that counsel's performance was deficient and the deficient performance prejudiced the case. *Id.* at 545.

To determine if counsel's performance is deficient, we consider all the circumstances surrounding a particular case and focus primarily on whether counsel performed in a reasonably effective manner. *Id.* (citing *Strickland*, 466 U.S. at 687); *see also In re H.R.M.*, 209 S.W.3d 105, 111 (Tex. 2006). "[C]ounsel's performance falls below acceptable levels of performance when the 'representation is so grossly

–12–

deficient as to render proceedings fundamentally unfair.'" *In re M.S.*, 115 S.W.3d at 545 (quoting *Brewer v. State*, 649 S.W.2d 628, 630 (Tex. Crim. App. 1983)). We indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* Conduct constitutes ineffective assistance of counsel only if it is "so outrageous that no competent attorney would have engaged in it." *Id.*

To show counsel's performance prejudiced a parent's case, the parent must show a reasonable probability that, but for counsel's error, the "result of the proceeding would have been different." *In re M.S.*, 115 S.W.3d at 550. "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome of the proceeding." *P.W. v. Dep't of Family & Protective Servs.*, 403 S.W.3d 471, 476 (Tex. App.—Houston [1st Dist.] 2013, pet. dism'd w.o.j.).

The record must affirmatively support a claim that trial counsel provided ineffective assistance. *In re L.G.R.*, 498 S.W.3d 195, 209 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). When the record is silent as to the reasons for trial counsel's actions, we may not engage in speculation to find ineffective assistance of counsel. *P.W.*, 403 S.W.3d at 476.

Under section 263.401, subsection (a) provides that the trial court's jurisdiction over the Department's suit is terminated on the first Monday following the first anniversary of the Department's appointment as temporary managing

–13–

conservator. *See* FAM. § 263.401(a). If the trial does not commence on or before that date, then the suit is automatically dismissed. *Id.*

Subsection (b) provides that the dismissal date may be extended up to 180 days if the trial court finds "that extraordinary circumstances necessitate the child remaining in the temporary managing conservatorship of the department and that continuing the appointment of the department as temporary managing conservator is in the best interest of the child." *Id.* § 263.401(b).

The trial court appointed the Department temporary managing conservator on April 12, 2021. The original dismissal date was the first Monday following one year after April 12, 2021, which was April 18, 2022. The trial was on March 28, 2022. If the trial court had made the findings necessary for extension of the dismissal date, the trial of the case could have been delayed up to October 15, 2022. Mother and her parole officer testified Mother was likely to be released sixty days after the trial, which would have been May 27, 2022. Mother argues she could then have completed the required services before a trial in October, retain her parental rights, and regain custody of her children.

There is no evidence of the reasons why Mother's attorney did not request an extension of the dismissal date. Mother did not file a motion for new trial seeking the testimony of her attorney. Mother had the burden of showing no competent attorney in this situation would have failed to request an extension of the dismissal date. *See In re M.S.*, 115 S.W.3d at 545. We conclude she has made no such

–14–

showing. Nor has Mother shown a reasonable probability that but for counsel's failure to request an extension of the dismissal date, the outcome of this case would have been different, i.e., that the trial court would have granted the motion to extend the dismissal date and that the parent–child relationship between Mother and the children would not have been terminated. *See In re M.S.*, 115 S.W.3d at 550.

Concerning whether the trial court would have granted the motion to extend the dismissal date, Mother points out that paragraph (b-2) of section 263.401 provides:

> When considering under Subsection (b) whether to find that extraordinary circumstances necessitate the child remaining in the temporary managing conservatorship of the department for a case in which the court orders a parent to complete a substance abuse treatment program, the court shall consider whether the parent made a good faith effort to successfully complete the program.

*Id.* § 263.401(b-2). Mother asserts on appeal that "she did in fact make 'a good faith effort to successfully complete" a substance-abuse program. We disagree. The record shows Mother did not receive any substance-abuse treatment before she was arrested on her parole violation, and her parole officer testified she did not receive substance-abuse treatment while incarcerated. The record does not show a reasonable probability that the trial court would have found Mother made a good-faith effort to successfully complete a substance-abuse treatment program, or that the trial court would otherwise have found extraordinary circumstances in this case.

Nor does the record show a reasonable probability that Mother's parental rights would not be terminated. The record does not show Mother would have engaged in and completed her services following her release and before the dismissal date. Mother testified she believed she had solved her drug problem while incarcerated. She testified she did not engage in the court-ordered services before her arrest because she lacked transportation. Mother's testimony shows she will not have access to a vehicle for transportation until she can save enough money from working at Dollar General to purchase a vehicle. There is no evidence in the record that Dollar General would hire her nor of how long it would take her to purchase a car. Thus, aside from Mother's statement that she planned to complete services after her release, there is no evidence she would be able to do that before trial following an extension of the dismissal date.

We conclude Mother has not shown she received ineffective assistance of counsel at trial because her attorney did not request an extension of the dismissal date and of the trial. We overrule Mother's first issue.

## CONCLUSION

We affirm the trial court's judgment.

/Lana Myers//
_____
LANA MYERS
JUSTICE

220426f.p05



## Court of Appeals
## Fifth District of Texas at Dallas

### JUDGMENT

IN THE INTEREST OF V.E.B. AND C.B., CHILDREN

No. 05-22-00426-CV

On Appeal from the 397th Judicial District Court, Grayson County, Texas
Trial Court Cause No. FA-21-0463.
Opinion delivered by Justice Myers. Justices Carlyle and Goldstein participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 2nd day of September, 2022.